1   EVERSHEDS SUTHERLAND (US) LLP
    Ian S. Shelton (Bar No. 264863)
2   (ianshelton@eversheds-sutherland.com)
    500 Capitol Mall, Suite 2350
3   Sacramento, California 95814
    Telephone:     (916) 844-2965
4   Facsimile:     (916) 241-0501

5
    EVERSHEDS SUTHERLAND (US) LLP
6   David A. Baay (*pro hac vice* forthcoming)
    (davidbaay@eversheds-sutherland.com)
7   1001 Fannin, Suite 3700
    Houston, Texas 77002
8   Telephone:     (713) 470-6100
    Facsimile:     (713) 654-1301
9

10  Attorneys for Plaintiff Crystal McKellar

11

12                  UNITED STATES DISTRICT COURT

13      NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

14  CRYSTAL SCRIPPS MCKELLAR,            CASE NO. 3:19-cv-07314-CRB

15              Plaintiff,              Hon. Charles R. Breyer

16      vs.                            **NOTICE OF MOTION AND MOTION
                                        FOR PRELIMINARY INJUNCTION**
17  MITHRIL CAPITAL MANAGEMENT LLC,
    MITHRIL GP EMPLOYEE FEEDER LLC,      Date:       February 28, 2020
18  and AJAY ROYAN,                      Time        10:00 a.m.
                                         Courtroom:  6 (17th Floor)
19              Defendants.             Address:     San Francisco Courthouse
                                                     450 Golden Gate Avenue
20                                                   San Francisco, CA 94102

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY INJUNCTION

1

## NOTICE OF MOTION

2      PLEASE TAKE NOTICE that on February 28, 2020, at 10:00 a.m., or as soon thereafter as

3   the matter may be heard in the above-entitled Court, located at Courtroom 6, 17th Floor, San

4   Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff

5   Crystal Scripps McKellar ("McKellar") will move this Court, pursuant to California Labor Code §

6   925 ("Section 925"), to enjoin Defendants Mithril Capital Management LLC ("Mithril") and

7   Mithril GP Employee Feeder LLC ("Feeder") from continued prosecution of Mithril's lawsuit

8   against McKellar in Texas, *Mithril Capital Management LLC v. Crystal Scripps McKellar*, No.

9   1:19-cv-1089-LY (W.D. Tex.) ("Texas Action"), and Feeder's lawsuit against McKellar in

10  Delaware, *Mithril GP Employee Feeder LLC v. Crystal Scripps McKellar*, No. 1:19-cv-02144-

11  RGA (D. Del.) ("Delaware Action").

12

## SUMMARY OF ARGUMENT

13     Mithril and Feeder filed retaliatory lawsuits against McKellar—a San Francisco resident

14  and former Mithril employee—in Texas and Delaware pursuant to unlawful choice of law and

15  choice of forum provisions in their employment contracts with McKellar.  "Section 925 makes

16  out-of-state choice of law and forum selection clauses illegal in California employment contracts,

17  and voidable by the employee."  *Miller-Garcia v. Avani Media, LLC*, No. 19-CV-04130-YGR,

18  2020 WL 95635, at *2 (N.D. Cal. Jan. 8, 2020).  Section 925(c) provides for "injunctive relief" to

19  vindicate the rights provided under the statute, and McKellar requests such relief from this Court.

20  *See Lyon v. Neustar, Inc*., No. 219CV00371KJMKJN, 2019 WL 1978802, at *1 (E.D. Cal. May 3,

21  2019) (granting plaintiff's motion for preliminary injunction under Section 925:  "This order

22  provides the reasons for the court's grant of the injunction, preliminarily enjoining defendant

23  Neustar from further pursuing litigation or arbitration against Lyon outside of California based on

24  alleged violations of the employment and termination agreements.")

25     McKellar is a California citizen and resident of San Francisco.  *See* Declaration of Crystal

26  McKellar ("McKellar Decl.") ¶ 26.  She was a California-based employee of Mithril—a venture

27  capital firm managed solely by Defendant Ajay Royan ("Royan")—which was headquartered in

28  San Francisco from June 2012 through February 2019.  *Id.* ¶ 27.  Feeder is affiliated with Mithril,

controlled by Royan, and is a vehicle through which current and former employees of Mithril shared in the profits of Mithril LP ("Fund I") investments managed by Mithril. *Id.* Ex. V. ¶ 3.

In late 2018 and early 2019, McKellar learned that Royan and Mithril had engaged in securities fraud. McKellar Decl. ¶ 3 (verifying complaint); Complaint ¶ 3. McKellar disclosed this fraud to the San Francisco office of the Securities and Exchange Commission ("SEC") and reported this information to Mithril's outside auditor located in San Francisco in March 2019. Complaint ¶ 6. She reported the fraud to the SEC again in May 2019. McKellar Decl. ¶ 30. McKellar had in-person meetings with members of the Corporate Fraud Strike Force at the United States Attorney's Office for the Northern District of California ("USAO") and the Federal Bureau of Investigation ("FBI") in May 2019 and again in June 2019. *Id.* At the SEC's request, McKellar had an in-person meeting with the SEC in June 2019, which was also attended by the FBI. *Id.* McKellar also produced documents to both agencies pursuant to subpoenas from the SEC and USAO. *Id.* McKellar is fully cooperating with these investigations, including most recently through another meeting with the SEC in December 2019, which she believes are important to protect the interests of Mithril's defrauded investors. *Id.* Mithril learned about McKellar's cooperation with the government after an investor who McKellar approached at the request of the FBI tipped Mithril off. Complaint ¶ 8. Mithril reached out to the FBI agent handling the case, and then retaliated against McKellar by terminating her employment and stripping her of her cash compensation, health care coverage, and her carried interest worth in excess of $15 million. *Id.*; McKellar Decl. Ex. P (admitting to knowledge of the FBI investigation prior to termination).

After retaliating against her for engaging in protected whistleblower activity, Mithril and Feeder sued McKellar in two lawsuits in two different states where McKellar has never worked—Texas and Delaware—claiming that McKellar's cooperation with federal law enforcement investigations violated certain provisions in her employment contracts. *Id.* ¶ 9. Mithril sued McKellar in Texas state court on October 2, 2019 and the next morning Royan publicly announced the lawsuit onstage at a large technology conference in San Francisco, prior to contacting McKellar's lawyers to inform her of the lawsuit. McKellar Decl. ¶ 33. McKellar removed the Texas Action to the Western District of Texas on November 7. *Id.* ¶ 4 & Ex. A.

1   Feeder sued McKellar in Delaware Chancery Court on October 18, 2019, and McKellar removed

2   the Delaware Action to the District of Delaware on November 15. *Id.* ¶ 5 & Ex. B.

3       On November 7, 2019, McKellar sued Mithril, Feeder, and Royan in this Court, asserting

4   claims for (1) Dodd-Frank whistleblower retaliation, (2) California whistleblower retaliation, (3)

5   termination in violation of public policy, (4) nonpayment of wages, (5) breach of contract, (6)

6   breach of the implied covenant of good faith and fair dealing, (7) breach of LLC Agreement, (8)

7   statutory unfair competition, (9) declaratory relief, and (10) injunctive relief ("California Action").

8   *See* Dkt. 1 (Complaint). The fifth, sixth, and ninth counts of the California Action address the

9   same legal issues as Mithril's three counts in the Texas Action. McKellar Decl., Ex. A. The

10  seventh and ninth counts in this Action address the same legal issues as Feeder's two counts in the

11  Delaware Action. *Id.* Ex. B.

12      Mithril's Texas Action is based on McKellar's alleged violation of two employment

13  contracts with Mithril—the Separation Agreement and the Consulting Agreement, both dated

14  February 11, 2019. McKellar Decl., Ex. A. Both contain a Texas choice of law provision and an

15  arbitration provision selecting Travis County, Texas as the forum.[1]  *Id.* Ex. E, F. Feeder's

16  Delaware Action is based on McKellar's alleged violation of Feeder's LLC Agreement and

17  McKellar's most recent Admission Letter to the LLC Agreement, dated February 11, 2019. *Id.*

18  Ex. B. The LLC Agreement contains a Delaware choice of law provision and a peculiar multi-

19  jurisdictional forum selection clause stating that "the parties hereto consent and submit to the

20  exclusive jurisdiction of the Federal and state courts of the State of Delaware and the Federal and

21  state courts of the State of California." *Id.* Ex. B-1 (Section 15.07). Because McKellar is not a

22  resident of Texas or Delaware, and because none of the relevant events in any of the three related

23  lawsuits occurred in those two states, Mithril and Feeder rely on the non-California choice of law

24  and choice of forum provisions in these contracts in bringing their retaliatory lawsuits against

25  McKellar in Texas and Delaware. McKellar Decl. ¶¶ 71-84. McKellar was not represented by

26  counsel when she signed the employment contracts and Admission Letter. *Id.* ¶ S35.

---

27  [1] Mithril decided to waive the arbitration provisions in its own contracts and file a highly

28  publicized lawsuit in Texas in order to disparage, intimidate, and financially devastate a whistleblower.

The non-California choice of law and choice of forum provisions in the Separation Agreement, Consulting Agreement, and LLC Agreement are void under Section 925(a) because they require McKellar to adjudicate outside of California a claim arising in California, and they deprive McKellar of the substantive protection of California law with respect to a controversy arising in California. Such illegal provisions are "voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute." Cal. Lab. Code § 925(b). McKellar notified Mithril and Feeder of her exercise of rights under Section 925 in her complaint in this Action (Complaint ¶¶ 261, 263), and she reaffirmed that action via letter to Mithril and Feeder dated January 14, 2020. McKellar Decl. Ex. R.

Section 925(c) expressly provides for injunctive relief to vindicate rights under the statute. All the requirements of Section 925 are satisfied here. McKellar was an employee of Mithril. McKellar Decl. ¶¶ 27, 45-70. She primarily resides and works in California. *Id.* The contracts at issue were entered or modified after January 1, 2017. *Id.* Ex. B-1, C, D, E, F. And she was not in fact individually represented by legal counsel in negotiating the terms of the contracts. *Id.* ¶¶ 34-35. Through this motion, McKellar requests that the Court grant a preliminary injunction under Section 925(c) similar to the one entered by the Court in *Lyon v. Neustar, Inc.*, No. 219CV00371KJMKJN, 2019 WL 1978802, at *10 (E.D. Cal. May 3, 2019), which would prohibit Mithril, Feeder, Royan, or any affiliated entities or persons, from:

1. Taking any action, making any requests or appearances, or seeking in any way to continue to litigate the Texas Action or Delaware Action, save and except for requesting immediate dismissal or stay of those actions.

2. Filing any new action or other proceeding in any jurisdiction outside of California arising from or related to the allegations in McKellar's complaint in this Court, McKellar's employment relationship with the parties, or any contracts between the parties, including without limitation the Separation Agreement, and Consulting Agreement and the LLC Agreement.

3. Depriving McKellar of the substantive protection of California law with respect to any claims, defenses, or issues raised in this Action, the Texas Action, and/or the Delaware Action.

Finally, given the equities and egregious retaliation in this case, McKellar requests that the Court award McKellar her reasonable attorney fees incurred in defending the serial foreign lawsuits brought in violation of Section 925 and in bringing the present motion to vindicate her rights under Section 925.  Cal. Labor Code § 925(c).  If the Court grants such relief, McKellar requests leave to file a supplemental motion setting the amount.

DATED:   January 17, 2020                EVERSHEDS SUTHERLAND (US) LLP

By */s/ Ian S. Shelton*
Ian S. Shelton

Attorneys for Plaintiff Crystal McKellar

MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

I.      FACTUAL BACKGROUND ............................................................................. 1

    A.    Mithril's Retaliation Against McKellar for Reporting Securities Fraud to the
SEC, the USAO, and the FBI. ................................................................... 1

    B.    The Texas Action. ...................................................................................... 2

    C.    Separation and Consulting Agreements. .................................................... 4

    D.    The Delaware Action. ................................................................................. 4

    E.    The LLC Agreement. .................................................................................. 5

    F.    The California Action. ................................................................................ 6

ARGUMENT ........................................................................................................................ 6

I.      THE COURT SHOULD ENJOIN MITHRIL'S CONTINUED PROSECUTION OF
THE TEXAS ACTION AND FEEDER'S CONTINUED PROSECUTION OF THE
DELAWARE ACTION ................................................................................... 6

    A.    McKellar has demonstrated a likelihood of success on the merits under
California Labor Code § 925. ..................................................................... 7

    B.    McKellar has demonstrated a likelihood of irreparable harm if the Texas and
Delaware Actions are not enjoined. ......................................................... 13

    C.    The balance of equities and public interest support issuance of an injunction. ...... 14

    D.    A bond is not appropriate in these circumstances. ................................... 14

II.     THE COURT SHOULD AWARD MCKELLAR ATTORNEY FEES ...................... 15

III.    CONCLUSION ............................................................................................ 15

MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Couriers Int'l v. Emp't Dev.*
   Dep't, 150 Cal. App. 4th 923, 934 (2007)..............................................................11

*Alabsi v. Savoya, LLC,*
   No. 18-CV-06510-KAW, 2019 WL 1332191 (N.D. Cal. Mar. 25, 2019) ...............................7

*Alexander v. FedEx Ground Package Sys., Inc.,*
   765 F.3d 981, 992 (9th Cir. 2014) ...................................................................8, 11

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) ...........................................................................7

*Campbell v. FAF, Inc.,*
   No. 19-CV-142-WQH-BLM, 2019 WL 2574119 (S.D. Cal. June 20, 2019) ...........................7

*Dynamex Operations West, Inc. v. Superior Court,*
   4 Cal.5th 903 (2018) .................................................................................10, 11

*Farris v. Seabrook,*
   677 F.3d 858 (9th Cir. 2012) ...........................................................................7

*Friedman v. Glob. Payments Inc.,*
   No. CV183038FMOFFMX, 2019 WL 1718690 (C.D. Cal. Feb. 5, 2019) ........................7, 12

*Karl v. Zimmer Biomet Holdings, Inc.,*
   No. C 18-04176 WHA, 2018 WL 5809428 (N.D. Cal. Nov. 6, 2018) ......................7, 8, 12

*Lopez v. Brewer,*
   680 F.3d 1068 (9th Cir. 2012) ...........................................................................7

*Lyon v. Neustar, Inc.,*
   No. 219CV00371KJMKJN, 2019 WL 1978802 (E.D. Cal. May 3, 2019) .................... *passim*

*Miller-Garcia v. Avani Media, LLC,*
   No. 19-CV-04130-YGR, 2020 WL 95635 (N.D. Cal. Jan. 8, 2020) .........................................i

*Narayan v. EGL, Inc.,*
   616 F.3d 895 (9th Cir. 2010) ...........................................................................8

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations,*
   48 Cal.3d 341 (1989)..................................................................................8, 11

MOTION FOR PRELIMINARY INJUNCTION

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...............................................................................................7

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
    No. 19-CV-00792-EMC, 2019 WL 5789273 (N.D. Cal. Nov. 6, 2019)................................7, 8

**Statutes**

28 U.S.C. §§ 1406 and 1404 ....................................................................................2, 5

California Labor Code § 925................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 65(c) .........................................................................14

MOTION FOR PRELIMINARY INJUNCTION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      FACTUAL BACKGROUND

**A.      Mithril's Retaliation Against McKellar for Reporting Securities Fraud to the SEC, the USAO, and the FBI.**

In late 2018 and early 2019, McKellar learned that Royan and Mithril had engaged in securities fraud.  Complaint ¶ 3.  McKellar discovered that Royan had lied repeatedly about Mithril in investor meetings, in its financial statements, on its website, and in published interviews with the press.  *Id.*  Royan lied regarding the management fees he had charged investors, the valuations of portfolio companies, the size of his investment team, the true reason for Mithril II LP's ("Fund II") slow deployment of capital, and the size of his personal investment in Mithril's funds.  *Id.*  In addition, Royan falsely inflated the valuations of impaired portfolio companies in reported financials, which enabled Royan to pilfer hundreds of thousands of dollars in unearned management fees and millions of dollars in unjustified carried interest from investors.  *Id.*

After she attempted to accomplish corrective action from the inside and was unsuccessful due to Royan's continued misconduct, McKellar disclosed this fraud to the SEC, USAO, and FBI between March and May 2019.  *Id.* ¶ 6.  She had in-person meetings with those regulators between May and June 2019.  *Id.*  McKellar also produced documents to both agencies pursuant to subpoenas from the SEC and USAO.  *Id.*  McKellar is fully cooperating with these ongoing investigations, including most recently through an in-person meeting with the SEC in December 2019.  *Id.*; *see also* McKellar Decl. ¶¶ 30-31.

Prior to July 15, 2019, Mithril learned about McKellar's cooperation with the government when a Mithril investor the FBI had enlisted to assist in the investigation tipped Royan off.  Complaint ¶ 8. Mithril swiftly contacted the FBI agent managing the investigation and then retaliated against McKellar by terminating her and stripping her of employment benefits worth in excess of $15 million.  *Id.*  Mithril admitted in writing that it knew about the government investigations and that it had been in contact with the government about the investigations before it acted against McKellar and forfeited her employment compensation on pretextual grounds. McKellar Decl. Ex. P.

After retaliating against her for engaging in protected whistleblower activity, Mithril and Feeder sued McKellar in two lawsuits in two different states where McKellar has never worked—Texas and Delaware—claiming that McKellar's cooperation with federal law enforcement investigations violated the Severance and Consulting Agreements as well as the LLC Agreement.

## B.    The Texas Action.

Mithril sued McKellar in Texas state court on October 2, 2019, and McKellar removed that action to the Western District of Texas on November 7. *Id.* ¶ 4. Mithril has not filed a motion to remand the Texas Action. Concurrently with the filing of the present motion for preliminary injunction on January 17, 2020, McKellar filed a responsive pleading in Texas asking the Texas court to (1) stay the action pending this Court's ruling on this motion, (2) or alternatively to dismiss the Texas Action for lack of personal jurisdiction and improper venue, (3) or alternatively to transfer the Texas Action to this Court pursuant to 28 U.S.C. §§ 1406 and 1404.

In the Texas Action, Mithril falsely alleges that McKellar violated restrictive covenants in the Separation and Consulting Agreements through her communications with third parties. McKellar Decl. Ex. A. The sole focus of those communications was Royan's ongoing fraud and assisting the government investigations, and none of those events occurred in Texas. In particular, Mithril claims that McKellar's communications with Mithril's outside auditor,[2] a portfolio company,[3] and investors[4] ***about the subject matter of Royan's fraud***—evidence that McKellar

---

[2] Mithril's Texas lawsuit vaguely alludes to McKellar's "allegations about Mithril's finances" that were directed to "one of Mithril's longest standing financial service providers." McKellar Decl. Ex. A ¶ 6. The subject matter of those communications to Mithril's outside auditor was Royan's fraudulent statements concerning waived management fees in 2017 (which were not waived). McKellar Decl. ¶ 37. McKellar reported that fraud and produced related documents to the government in furtherance of their investigations in California. *Id.* None of the events relevant McKellar's communications with the outside auditor occurred in Texas. *Id.*

[3] Mithril's Texas lawsuit vaguely states that McKellar wrote letters to "a major Mithril portfolio company" to "sow discord between Mithril and its business partners." McKellar Decl. Ex. A ¶ 6. The subject matter of those communications was Royan's fraudulent statements about the portfolio company, including false statements made to Mithril's investors and about the performance of the portfolio company that was publicly reported in a February 28, 2019 Fortune Magazine article. McKellar Decl. ¶ 38. Royan sat on the board of that portfolio company and knew his statements were false when made. *Id.* McKellar reported that fraud and produced related documents to the government in furtherance of their investigations in California. *Id.* None of the events relevant to McKellar's communications with the portfolio company occurred in Texas. *Id.*

[4] Mithril's Texas lawsuit vaguely states that McKellar "falsely disparaged Mithril to its

produced to the government pursuant to subpoenas to assist in their investigations—violated her employment contracts with Mithril.  Mithril also claims that McKellar violated the contracts by working for a competing venture fund, taking Mithril investment opportunities after offering such opportunities to Mithril, and soliciting Mithril investors for her new fund.  *Id.* Ex. A ¶¶ 14-62.  In addition to being false, these non-compete allegations are unrelated to Texas.

McKellar never worked for a competing venture fund when she worked for Mithril.  McKellar Decl. ¶ 40.  McKellar did perform work for a San Francisco-based core U.S. long/short hedge fund ("SF Hedge Fund"), which invests exclusively in U.S. public equities.  *Id.*  McKellar's work for the SF Hedge Fund was permitted by the Separation and Consulting Agreements.  Furthermore, McKellar performed all her work for the SF Hedge Fund in California.  *Id.*

Mithril also claims that McKellar violated the non-compete by launching her own venture fund called Anathem Ventures.  *Id.* Ex. A ¶ 51.  But the formation date of McKellar's venture fund is October 24, 2019, over three months after Mithril terminated her.  McKellar Decl. ¶ 41.  Anathem Ventures is based in San Francisco, California and McKellar's actions or conduct relating to its formation and operation occurred in California.  *Id.*

Mithril claims that McKellar took investment opportunities from Mithril.  *Id.* Ex. A ¶ 75.  This allegation is false.  During the time she worked for Mithril in California, McKellar never invested in a private technology company without first offering the investment opportunity to Mithril in writing, in accordance with Section 4.5 of the Consulting Agreement.  McKellar Decl. ¶ 42; Complaint ¶¶ 198-200.  McKellar's communications with Mithril and the companies at issue occurred in California.  McKellar Decl. ¶ 41.

Finally, Mithril's allegation that McKellar solicited its investors for her new venture fund is also false.  *Id.* Ex. A ¶ 75.  In fact, in every instance in which McKellar has been approached by Mithril investors seeking to invest in her new fund, she has informed them that she could not

counterparties."  McKellar Decl. Ex. A ¶ 7.  The subject matter of those communications with Mithril's investors, none of which were anonymous and which were conducted over email, text message, telephone, and in-person meetings, was Royan's fraudulent statements about the topics identified in paragraph 4 of McKellar's complaint.  McKellar Decl. ¶ 39.  McKellar reported that fraud and produced related documents to the government in furtherance of their investigations in California.  *Id.*  None of the events relevant to Mithril's false allegations about McKellar's communications with investors occurred in Texas.  *Id.*

solicit Mithril investors.  McKellar Decl. ¶ 43.  McKellar has not accepted any Mithril investor as an investor in her new fund.  *Id.*  All of these communications relevant to this issue occurred in California.  *Id.*

In sum, none of the false allegations in Mithril's complaint have anything to do with Texas or Delaware.  McKellar's cooperation with the SEC, USAO, and DOJ investigations occurred in California.  McKellar's communications with Mithril's outside auditor, a portfolio company, and investors regarding Royan's fraud originated in California, and none of those communications were directed to Texas or Delaware.  And McKellar's alleged competition with Mithril—which is a pretext for Mithril's retaliation—occurred in California.

**C.**     **Separation and Consulting Agreements.**

The Texas Action is based on McKellar's alleged breaches of the Separation and Consulting Agreements, both dated February 11, 2019.  McKellar Decl. Ex. E, F.  McKellar executed those agreements in California.  *Id.* ¶¶ 8-9.  Royan also executed both agreements while in California.  *Id.*  Mithril still maintained its office in San Francisco on February 11, 2019—the date that Royan and McKellar executed the Separation Agreement and the 2019 Admission Letter in San Francisco.  *Id.* ¶ 47.  Both contracts contemplated McKellar's performance of those contracts in California.  *Id.* Ex. E, F.

Consistent with the contracts, McKellar did not serve as General Counsel after February 11, 2019, but she continued to perform the same non-legal job functions.  McKellar Decl. ¶¶ 60-70.  McKellar worked at Mithril's California office until it was closed on February 26, 2019.  *Id.* ¶ 61.  After that time, McKellar performed her obligations from her home in California.  *Id.* ¶ 62.  McKellar never traveled to Texas or Delaware in connection with her obligations under the Separation or Consulting Agreements.  *Id.* ¶ 61.

**D.**     **The Delaware Action.**

Feeder sued McKellar in Delaware Chancery Court on October 18, 2019, and McKellar removed that action to the District of Delaware on November 15. McKellar Decl. Ex. B.  Mithril filed a motion to remand the Delaware Action on December 16, which McKellar has opposed and is currently pending.  *Id.* ¶ 5.  Concurrently with the filing of the present motion for preliminary

-4-

injunction on January 17, 2020, McKellar filed a responsive pleading in Delaware asking the Delaware court to (1) stay the action pending this Court's ruling on this motion, (2) or alternatively to dismiss the Delaware Action for lack of personal jurisdiction and improper venue, (3) or alternatively to transfer the Delaware Action to this Court pursuant to 28 U.S.C. §§ 1406 and 1404.

While Mithril falsely alleges that McKellar violated the confidentiality, non-compete, non-solicit, and non-disparagement provisions of the Separation and Consulting Agreements, Feeder falsely alleges that McKellar violated the confidentiality, non-compete, non-solicit, and non-disparagement provisions of the LLC Agreement. McKellar Decl. Ex. B. Just as the facts of the Texas Action have nothing to do with Texas, the facts of the Delaware Action have nothing to do with Delaware. Both actions focus on McKellar's alleged breaches of contract in California. *Id.* Ex. B ¶ 4. Feeder misleadingly mischaracterizes the scope of illegal restrictive covenants in the LLC Agreement. *Id.* Ex. B ¶ 2. The actual text of those covenants is limited to actions taken in connection with Fund I—a fund that Mithril pleads was "fully invested" and was no longer considering new investments by January 4, 2017. *Id.* Ex. B ¶ 10; *see also* McKellar Decl. Ex. B-1 ¶ 1.55 (defining "Fund").[5]

## E.     The LLC Agreement.

McKellar signed her most recent Admission Letter to the LLC Agreement on February 11, 2019. McKellar Decl. Ex. B-2. The Admission Letter contains a Delaware choice of law provision (*id.* at 2) and cross-references the LLC Agreement, which also contains a Delaware choice of law provision and a peculiar multi-jurisdictional forum selection clause selecting *both* Delaware *and* Texas as the "exclusive jurisdiction" for resolving disputes. *Id.* Ex. B-1 (Section

---

[5]   Even assuming the restrictive covenants that Feeder raises in the Delaware Action are enforceable (they are not), Feeder's pretextual forfeiture theory under the LLC Agreement is not factually plausible and focuses on actions that McKellar allegedly took in 2019—years after Fund I stopped making new investments. For example, Feeder broadly argues that McKellar violated a non-compete covenant, but it identifies no Fund I opportunity she allegedly acquired. McKellar Decl. Ex. B ¶ 69. Feeder argues that McKellar violated a non-solicitation covenant, but it identifies no Fund I investors she allegedly solicited. *Id.* ¶ 70. Feeder argues that McKellar violated confidentiality and non-disparagement covenants by communicating with third parties about Royan's fraud—and then producing that same evidence to federal investigators—but the LLC Agreement expressly authorizes cooperation with such investigations. *Id.* ¶ 72; *see also* McKellar Decl. Ex. B-1 ¶ 14.01.

MOTION FOR PRELIMINARY INJUNCTION

15.07).

**F.     The California Action.**

After Mithril sued McKellar in the Texas and Feeder sued her in Delaware, McKellar sued Mithril, Feeder, and Royan in this Court on November 7.   Dkt. 1.   McKellar's complaint specifically raised Section 925, put Mithril and Feeder on notice, and sought the injunctive relief that is the subject of this motion.  *Id.* ¶¶ 261, 263.  On January 14, 2020, McKellar wrote a letter to Mithril and Feeder reaffirming the prior exercise of her rights under Section 925.  McKellar Decl. Ex. R.  As to the Separation Agreement, dated February 11, 2019, McKellar declared void the Texas choice of law provision and the provision stating that arbitration will occur in Travis County, Texas.  *Id.* Ex. E (Page 6).  As to the Consulting Agreement, dated February 11, 2019, she declared void the Texas choice of law provision, the provision consenting to personal jurisdiction in Texas for arbitration that will occur in Travis County, Texas, and the provision stating that arbitration will occur in Travis County, Texas.  *Id.* Ex. F (Section 12, 13).  As to the Amended and Restated Limited Liability Company Agreement of Mithril GP Employee Feeder LLC, as modified and extended by Ms. McKellar's Admission Letter, dated February 11, 2019, she declared void the Delaware choice of law provision and Delaware choice of forum provision.  *Id.* Ex. B-1 (Secton 15.07).  As to her Admission Letter, dated February 11, 2019, she declared void the Delaware choice of law provision.  *Id.* Ex. B-2 (Page 2).  Finally, she declared void any and all other non-California choice of law and choice of forum provisions in any other contracts relevant to the present dispute.  *Id.* Ex. R.

**ARGUMENT**

**I.     THE COURT SHOULD ENJOIN MITHRIL'S CONTINUED PROSECUTION OF THE TEXAS ACTION AND FEEDER'S CONTINUED PROSECUTION OF THE DELAWARE ACTION**

In determining whether to issue a preliminary injunction, the Court must consider whether McKellar (1) is likely to succeed on the merits, (2) is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is

1   in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[6]

2        **A.**     **McKellar has demonstrated a likelihood of success on the merits under**

3          **California Labor Code § 925.**

4          **1.**     **The contracts violate California Labor Code § 925(a).**

5        California Labor Code § 925(a) states that "[a]n employer shall not require an employee

6   who primarily resides and works in California, as a condition of employment, to agree to a

7   provision that would do either of the following: (1) Require the employee to adjudicate outside of

8   California a claim arising in California.  (2) Deprive the employee of the substantive protection of

9   California law with respect to a controversy arising in California."

10        California federal courts regularly invalidate non-California choice of law and forum

11   selection clauses under Section 925.[7]  "District courts have determined that § 925 expresses

12   California's strong public policy against forum-selection clauses in employment agreements."

13   *Campbell v. FAF, Inc.*, No. 19-CV-142-WQH-BLM, 2019 WL 2574119, at *5 (S.D. Cal. June 20,

14   2019) (collecting cases).  The Court should do the same here because McKellar has demonstrated

15   a likelihood of success as to the elements of her Section 925 claim.

16          **2.**     **McKellar was an employee of Mithril.**

17        Section 925(b) states that provisions of a contract that violate Section 925(a) are "voidable

18   by the employee."  It is undisputed that McKellar was an employee of Mithril from June 2012

---

19   [6]  The Ninth Circuit has "also articulated an alternate formulation of the *Winter* test." *Farris v.*

20   *Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).  That formulation is referred to as the "serious questions" or the "sliding scale" approach:  "'serious questions' going to the merits and a balance

21   of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and

22   that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see also id.* at 1131-32 ("the 'serious questions' approach

23   survives *Winter* when applied as part of the four-element *Winter* test").  Under the "serious questions" approach, "[t]he elements of the preliminary injunction test must be balanced, so that a

24   stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

25   [7]  *See Lyon*, 2019 WL 1978802, at *10 (granting preliminary injunction and enjoining proceedings in non-California forums); *see also see also Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-

26   CV-00792-EMC, 2019 WL 5789273, at *9 (N.D. Cal. Nov. 6, 2019) (invalidating non-California forum selection clause under Section 925); *Alabsi v. Savoya, LLC*, No. 18-CV-06510-KAW, 2019

27   WL 1332191, at *7 (N.D. Cal. Mar. 25, 2019) (same); *Friedman v. Glob. Payments Inc.*, No. CV183038FMOFFMX, 2019 WL 1718690, at *4 (C.D. Cal. Feb. 5, 2019) (same); *Karl v. Zimmer*

28   *Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2018 WL 5809428, at *3 (N.D. Cal. Nov. 6, 2018) (same).

until February 2019, when she signed the Separation and Consulting Agreements and the Admission Letter to the LLC Agreement. McKellar Decl. ¶¶ 45-47. Mithril's June 25, 2012 offer letter identified McKellar as "an employee of the Company" and provided a salary in addition to a 3% carried interest in Fund I. *Id.* Ex. C. McKellar seeks to void contractual provisions under Section 925 that she signed in her capacity as an employee and relate to the conditions of her employment, including restrictive covenants and severance. *Id.* Ex. E, F. Consequently, Mithril's purported reclassification of McKellar as an independent contractor *after* the execution of those contracts is irrelevant.

Even assuming McKellar's employee status between February 11, 2019 (the date of the contracts) and July 17, 2019 (the date of her termination) is relevant to Section 925 (it is not), she was an employee of Mithril during that time period too. *Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2018 WL 5809428, at *3-4 (N.D. Cal. Nov. 6, 2018) (quoting *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341, 349 (1989) ("*Borello*") (applying Section 925 in favor of an employee misclassified as an independent contractor); *Yeomans*, 2019 WL 5789273, at *4 (similar). Because McKellar alleges that she was misclassified under the Consulting Agreement (Complaint ¶ 27), the Court must consider "whether the complaint sets out facts and circumstances (taken as true) from which one could conclude that plaintiff has made a substantial showing that he or she is an employee under California law." *Karl*, 2018 WL 5809428, at *3-4

McKellar's burden is to allege facts sufficient to show that her misclassification allegation is "plausible." *Id.* California courts have recognized that "the burden of proof is on the party attacking the employment relationship," here Mithril. *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 992 (9th Cir. 2014); *see also Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010) (holding that once employees had established a *prima facie* case of employment status by coming forward with evidence that they provided services for the company, the burden shifted to the company to establish by a preponderance of the evidence that the drivers were independent contractors).

McKellar was a senior member of Mithril's investment team, managed investor

relationships, served on the boards of certain portfolio companies, and held the title of Managing Director from June 14, 2012 through February 11, 2019.  Complaint ¶ 13.  Although McKellar also served as Mithril's General Counsel, McKellar spent the vast majority of her time at Mithril performing non-legal job functions related to Mithril's investment activities and communications with Mithril's investors.  *Id.* ¶ 25.  McKellar affirmatively pleads that she "was an employee of Mithril Capital Management LLC from June 14, 2012 through July 17, 2019, when Mithril terminated her in retaliation for reporting fraud to the SEC and other regulators."  *Id.* ¶¶ 26-27. While the Consulting Agreement misclassifies McKellar as an independent contractor, the actual terms of that contract establish she was not.

The Consulting Agreement stated that she would provide "advisory services in connection with management of the Company's portfolios for the term of this Agreement"—the same non-legal job function she had as an employee.  McKellar Decl. Ex. F (Section 1.1).  It stated her title would be "Advisory Managing Director"—similar to the "Managing Director" title she held as an employee.  *Id.*

The Consulting Agreement also stated she was "required to report directly to Ajay Royan or his designee" and "provide her services in accordance with the instructions therefrom and with such reasonable instructions given to Consultant by any other member or officer of the Company"—the same level of direct supervision and control to which she was subject as a Mithril employee.  *Id.*  It stated the term of the engagement was a full year and subject to extension by Mithril—not by job or task.  *Id.* (Section 2.1).  It further stated that the engagement could be terminated by either party for any reason, with or without cause—the same at-will relationship she had as a Mithril employee.  *Id.* (Section 2.2).  It also stated that she would be paid a monthly lump sum without regard to the work perform or results achieved—the same type of regular salaried payment she had as a Mithril employee.  *Id.* (Section 3).

In addition to being inconsistent with the description of her duties under the contract, Mithril's misclassification of McKellar as an "independent" contractor is inconsistent with the restrictive covenants found in both the Consulting and Separation Agreements, which form the basis for the foreign lawsuits against McKellar.  Those covenants purport to bind her both during

and after her employment with Mithril.  McKellar Decl. Ex. E at 4.  They also create an exclusive relationship that is the hallmark of employee status.  The Consulting Agreement states that "[d]ue to the unique nature of the venture capital field, Consultant agrees not to perform advisory services or other services for, or provide consulting to, any venture capital firm, private equity firm, or any company that invests in, or manages funds that invest in, venture capital or private equity funds during the Term of this Agreement without first notifying and obtaining written consent from the Managing General Partner."  McKellar Decl. Ex. F (Section 4.4).  Restrictive covenants that purport to bind the employee both during employment and for a year afterwards are inconsistent with an independent contractor relationship.

The facts on the ground after February 11, 2019 overwhelmingly support the conclusion that McKellar acted as an employee of Mithril through her termination on July 17, 2019. McKellar Decl. ¶¶ 45-70.  From February 11-26, 2019, McKellar worked in Mithril's San Francisco office under the direction and supervision of Mithril's chief of staff John Kingsbury, who acted as Royan's proxy.  *Id.* ¶ 61.  After February 26, 2019, McKellar continued to work for Mithril remotely from home and used her Mithril email address to communicate with existing portfolio companies and potential investments.  *Id.* ¶ 62.  Although McKellar had become convinced of Royan's fraud by March 2019, she continued to perform work for Mithril while cooperating with the government investigations, and Kingsbury continued to request assistance with matters that were consistent with McKellar's past work as a Mithril employee before February 11.  *Id.* ¶¶ 63-70.

Regardless of whether the Court applies the old *Borello* test or the new *Dynamex* test for employee status under California law, McKellar has plausibly alleged that she is was a Mithril employee from June 2012 (her date of hire) to July 2019 (her date of termination) because she performed the same non-legal job functions with the same job title before and after her purported reclassification.  McKellar Decl. ¶¶ 55-60; *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903 (2018); *see also* Cal. Assembly Bill No. 5 (signed Sept. 18, 2019, adopting the *Dynamex* test, adding Cal. Labor Code § 2750.3, and amending Cal. Labor Code § 3351 and Cal. Unemployment Insurance Code §§ 606.5 and 621).

Under *Borello*, "the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *Alexander,* 765 F.3d at 988 (quoting *Borello*, 769 P.2d at 404) (holding that FedEx drivers are employees under *Borello* as a matter of law notwithstanding contracts purporting to classify them as independent contractors).  The "right to control" test does not require "absolute control"; instead, employee status may be found where "[a] certain amount of . . . freedom is inherent in the work."  *Id.* at 990 (quoting *Air Couriers Int'l v. Emp't Dev.* Dep't, 150 Cal. App. 4th 923, 934 (2007)).[8]

The *Borello* factors overwhelmingly support the conclusion that McKellar plausibly alleges she was an employee, not an independent contractor, from her unlawful reclassification in February 2019 until her termination in July 2019.  Her work was part of Mithril's regular business, Mithril supplied the equipment and tools for her work, her work was performed at Mithril's direction, she was paid a salary, and her work was performed over an extended period of time.  McKellar Decl. ¶ 67.

The same result occurs under the *Dynamex* test, which adopted the ABC test.  4 Cal.5th at 55-56.[9]  A worker is an employee if the employer fails to prove *any* of the ABC factors.  *Id.*  Just as she was an employee under the *Borello* test, *a fortiori* McKellar was also an employee under

---

[8]  California courts also consider several secondary indicia of the nature of a service relationship. *Alexander*, 765 F.3d at 988.  The right to terminate at will, without cause, is strong evidence in support of an employment relationship.  *Id.*  Additional factors include:  (1) whether the one performing services is engaged in a distinct occupation or business; (2) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (3) the skill required in the particular occupation; (4) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (5) the length of time for which the services are to be performed; (6) the method of payment, whether by the time or by the job; (7) whether or not the work is a part of the regular business of the principal; and (8) whether or not the parties believe they are creating the relationship of employer-employee.  *Id.* at 989.  These factors generally cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations."  *Id.*

[9]  The ABC test presumptively considers all workers to be employees, and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies each of three conditions:  (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.  *Dynamex*, 4 Cal.5th at 55-56.

-11-

1    the *Dynamex* test because Mithril cannot establish *any* of the ABC elements, much less all of

2    them.  McKellar was not free from the control and direction of Mithril in the performance of her

3    work.  McKellar Decl. ¶ 68.  She did not perform work outside the usual course of Mithril's

4    business.  *Id.* ¶ 69.  And she was not customarily engaged in an independently established

5    occupation or business.  *Id.* ¶ 70.  McKellar is properly considered an employee for purposes of

6    Section 925.

7                     **3.       McKellar primarily resides and works in California.**

8            Section 925(a) states that the statute applies to "an employee who primarily resides and

9    works in California."   McKellar resided in California when she executed the Separation

10   Agreement, the Consulting Agreement, and the Admission Letter to the LLC Agreement on

11   February 11, 2019.  McKellar Decl. ¶ 47.

12                    **4.       The contracts were entered into or modified after January 1, 2017.**

13           Section 925(f) states that "[t]his section shall apply to a contract entered into, modified, or

14   extended on or after January 1, 2017."   McKellar entered into the Separation and Consulting

15   Agreements, which form the basis of the Texas Action, on February 11, 2019.  McKellar Decl. Ex.

16   E, F.  McKellar entered her most recent Admission Letter to the LLC Agreement on February 11,

17   2019, which modified and extended her contractual rights under the LLC Agreement, and which

18   forms the basis of the Delaware action.  *Id.* Ex. B-2; *Karl*, 2018 WL 5809428, at *3.   By

19   increasing McKellar's carried interest under the LLC Agreement from 3% to 4.5%, the Admission

20   Letter "constituted a modification to the most important component of [McKellar's] employment

21   agreements, i.e., [her] compensation."  McKellar Decl. ¶ 54; *Friedman*, 2019 WL 1718690, at *3

22   (voiding forum selection clause under Section 925).

23                    **5.       McKellar was not in fact individually represented by legal counsel in**

24                    **negotiating the terms of the contracts.**

25           Section 925(e) states that "[t]his section shall not apply to a contract with an employee

26   who is in fact individually represented by legal counsel in negotiating the terms of an agreement to

27   designate either the venue or forum in which a controversy arising from the employment contract

28   may be adjudicated or the choice of law to be applied."  This statute has two elements:  (1) the

1  employee must be in fact individually represented by legal counsel, and (2) legal counsel must

2  have actually negotiated the terms of the contract at issue.  Neither element is satisfied here.

3       First, Section 925(e) is inapplicable because McKellar was not in fact individually

4  represented by legal counsel.  McKellar Decl. ¶¶ 35, 48, 49, 52.  The use of the term "in fact"

5  requires actual representation, not boilerplate language in the contract stating that the employee

6  had the "opportunity" to be represented by legal counsel, or was represented by counsel when "in

7  fact" the employee was not.

8       Second, McKellar did not have legal counsel at all, and thus no legal counsel "negotiated"

9  any terms of the contracts at issue.  McKellar describes the oppressive circumstances of her

10  execution of the Separation and Consulting Agreements, and the Admission Letter, at length in

11  paragraphs 134-146 of her complaint.[10]  The circumstances of McKellar's signing of the contracts

12  exemplifies the unequal bargaining power and high-pressure tactics that Section 925 was enacted

13  to address.

14       **B.    McKellar has demonstrated a likelihood of irreparable harm if the Texas and**

15       **Delaware Actions are not enjoined.**

16       McKellar will be subject to irreparable harm if she is personally required to litigate a three-

17  front war with Mithril—a venture capital firm with over $1 billion under management—in

18  California, Texas, and Delaware.  The *Lyon* court found that the employee made a showing of

19  irreparable harm based on evidence that forcing a California resident to defend against

---

20  [10]  Royan informed McKellar after business hours on the evening of February 11, 2019 that he

21  would be presenting her with the contracts on a take-it-or-leave-it basis, and stated that the deal

22  was off if she did not sign the contracts on the same date (February 11, 2019).  McKellar Decl. ¶ 49.  Royan sent McKellar the contracts, which cross-referenced each other, to review piecemeal beginning at 11:22 p.m., on February 11, 2019, and Royan did not send the full set until 12:58

23  a.m. on February 12, 2019.  *Id.* ¶ 50.  He continued pressuring McKellar to sign the contracts that same night, even though it was past February 11, texting her, "We should be good on Hawaii time.

24  Which is the only time zone that matters.  Or Alaska."  *Id.*  McKellar signed the contracts 16 minutes later at 1:14 a.m. while she sat in Mithril's San Francisco office, and while she was being

25  physically monitored by Kingsbury.  *Id.* ¶ 51.  Royan provided the countersigned set of contracts to her at 1:37 a.m.  *Id.*  McKellar was not represented by legal counsel during the 16 minute period

26  that elapsed between when Royan sent her the full set of contracts and when she returned them— indeed, given the way in which Royan engineered the timing, it would have been impossible for

27  McKellar to consult with counsel.  *Id.* ¶ 52.  Royan and McKellar never discussed the non-California choice of law and choice of forum provisions in the contracts at any time.  *Id.* ¶ 53.  Nor

28  did McKellar negotiate any terms of the contracts.  She corrected the date and her address in the Consulting Agreement and signed the Separation Agreement without any change.

1    proceedings in Virginia would frustrate his rights under Section 925, harm him economically, and

2    detract his energies from his new business, which was in its "infancy" and "at a critical stage of

3    development."  2019 WL 1978802, at *8.  The same facts support a finding of irreparable harm

4    here.[11]

5              **C.      The balance of equities and public interest support issuance of an injunction.**

6              The balance of equities and public interest likewise support issuance of an injunction.

7    California has a strong interest in protecting its employees.  *Lyon,* 2019 WL 1978802, at*8.  The

8    fact that McKellar was not represented by counsel, and the oppressive circumstances of her

9    execution of the contracts at issue, undercut any opposing interest in "freedom of contract."  *Id.*

10   When addressing this factor, the *Lyon* court held that "any contract provision that runs afoul of

11   section 925 is contrary to California's strong public interest in protecting its employees, and "[o]n

12   that ground alone, the public policy interests relevant here weigh in support" of injunctive relief.

13   *Id.* at *9.  The same reasoning applies here.[12]  All relevant factors weigh in favor of entry of an

14   injunction under *Winter* or the alternative sliding scale approach.  *Lyon,* 2019 WL 1978802, at *9.

15             **D.      A bond is not appropriate in these circumstances.**

16             Federal Rule of Civil Procedure 65(c) invests the Court with "discretion as to the amount

17   of security required, *if any.*"  (emphasis added).  The *Lyon* court found that a bond was not

18

19   [11]   The financial strain of this litigation—which currently spans across North America—is
     enormous.  McKellar Decl. ¶ 97.  Mithril is represented by no fewer than nine attorneys from three
20   law firms—including four partners from Kirkland & Ellis alone.  *Id.*  Feeder recently filed a
     motion to remand the Delaware action, and then requested attorney fees from McKellar—an
21   individual—for the first time in its reply brief.  *Id.*  When McKellar requested advancement of her
     defense costs for the Texas and Delaware Actions—as required by the LLC Agreement that
22   Feeder is suing under—Mithril rejected that demand.  *Id.*; *see also* McKellar Decl. Ex. S, T.
     Pursuing three separate lawsuits against Mithril and Feeder—rather than just one in this Court—
23   will detract McKellar from her new business, Anathem Ventures, which just launched in October
     2019 (months after her termination) and is at a critical stage of development.  McKellar Decl. ¶
24   97.
     [12]  Moreover, Mithril retaliated against McKellar with these oppressive lawsuits after learning she
25   had reported its commission of securities fraud to the government in order to protect Mithril's
     defrauded investors.  Complaint ¶¶ 6-8.  As the SEC describes on its website, when individuals
26   such as McKellar come forward with information to help the Commission identify fraud, "[t]his
     allows the Commission to minimize the harm to investors, better preserve the integrity of the
27   United States' capital markets, and more swiftly hold accountable those responsible for unlawful
     conduct."  *See* https://www.sec.gov/whistleblower.  Permitting fraudsters to bankrupt
28   whistleblowers through abusive litigation practices would frustrate the aims of the securities laws.
     The public interest strongly supports issuance of an injunction.

appropriate in similar circumstances, and McKellar requests that this Court do the same, particularly in light of McKellar's status as an individual and the facts supporting irreparable harm identified above.[13] *Lyon,* 2019 WL 1978802, at *9.

## II.      THE COURT SHOULD AWARD MCKELLAR ATTORNEY FEES

Section 925(e) contains a fee shifting provision stating that "a court may award an employee who is enforcing his or her rights under this section reasonable attorney's fees." Given the facts set forth above, the Court should exercise its discretion to award attorney fees incurred by McKellar in vindicating her rights under Section 925, including the fees she incurred in defending the Texas and Delaware Actions prior to entry of any injunction as well as the fees incurred in connection with preparing the present motion. The fact that Mithril violated Section 925 in furtherance of its retaliation against a whistleblower strongly supports fee shifting. The same facts that support entry of a preliminary injunction also support a fee award. If the Court grants this relief, McKellar requests leave to file a supplemental motion to determine the amount.

## III.      CONCLUSION

McKellar respectfully requests that the Court grant the preliminary injunction and grant McKellar her reasonable attorney fees.

DATED:   January 17, 2020              EVERSHEDS SUTHERLAND (US) LLP


                                       By */s/ Ian S. Shelton*
                                       Ian S. Shelton

                                       Attorneys for Plaintiff Crystal McKellar

---

[13]   Requiring a California employee to post a bond to vindicate rights under Section 925 would be contrary to the strong California public policy reflected in the statute, particularly when there is a substantial disparity in economic resources between the employee and the employer. McKellar Decl. ¶ 97. Nor can Mithril prove that it is likely to suffer any damages requiring security because it can simply litigate the same issues raised in the Texas and Delaware Actions in this Court. Indeed, the same parties, same claims, and same issues are raised in McKellar's California complaint.

-15-

1

### PROOF OF SERVICE

2        On January 17, 2020, I served true copies of the above documents on the interested parties

3    in this action as follows:

4        **BY CM/ECF.**   I caused to be served the above-referenced document by the Court's

5    electronic CM/ECF system.  The transmission was reported as complete and without error.

6        **BY ELECTRONIC MAIL.**   I caused to be served the above-referenced document by

7    electronic mail.  The transmission was reported as complete and without error.

8

9        I declare under penalty of perjury under the laws of the United States that the above is true

10   and correct.

11

12   DATED:   January 17, 2020            EVERSHEDS SUTHERLAND (US) LLP

13

14                                    By */s/ Ian S. Shelton* _____
                                         Ian S. Shelton

15                                    Attorneys for Plaintiff Crystal McKellar

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-
PROOF OF SERVICE