Mark C. Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
michael.shipley@kirkland.com
Edward Hillenbrand (SBN 310872)
edward.hillenbrand@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, California 90071
Telephone:     (213) 680-8400
Facsimile:     (213) 680-8500

Rebekah Sills (admitted *pro hac vice*)
rebekah.mcentire@kirkland.com
KIRKLAND & ELLIS LLP
609 Main Street, Suite 4600
Houston, Texas 77002
Telephone:     (713) 836-3600
Facsimile:     (713) 836-3601

*Attorneys for Defendants*
*Mithril Capital Management LLC,*
*Mithril GP Employee Feeder LLC, and*
*Ajay Royan*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL SCRIPPS MCKELLAR,<br><br>                    Plaintiff,<br><br>          v.<br><br>MITHRIL CAPITAL MANAGEMENT LLC, MITHRIL GP EMPLOYEE FEEDER LLC, and AJAY ROYAN,<br><br>                    Defendants. | CASE NO. 3:19-CV-07314-CRB<br><br>**DEFENDANTS MITHRIL CAPITAL MANAGEMENT LLC, MITHRIL GP EMPLOYEE FEEDER LLC, AND AJAY ROYAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Judge**: Honorable Charles R. Breyer<br>**Hearing Date**: February 28, 2020<br>**Time**: 10:00 a.m.<br>**Courtroom**: 6, 17th Floor |

## TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................................i

II.  FACTUAL BACKGROUND.................................................................................................1

    A.   Ms. McKellar Became General Counsel of Mithril Capital in June 2012 and a Professional Member of Mithril Feeder in March 2014. ...................................................1

    B.   Ms. McKellar's Employment at Mithril Capital Ended on February 11, 2019. ...............1

    C.   Ms. McKellar Negotiated, Reviewed, and Signed the Separation and Consulting Agreements, and Was Well Aware of Their Terms Before Signing. ...............................2

    D.   Ms. McKellar Knew, Agreed, and Behaved Like She Was No Longer an Employee of Mithril Capital after February 11, 2019. ......................................................3

    E.   As Intended by the Parties, Ms. McKellar Performed Some Transitional Work Under the Separation Agreement and No Work Under the Consulting Agreement........4

    F.   Rather Than File Counterclaims in the Texas and Delaware Actions, Ms. McKellar Filed This Action and Seeks to Enjoin the First-Filed Mithril Lawsuits. ...........................................................................................................................5

III. ARGUMENT ........................................................................................................................6

    A.   All of Ms. McKellar's Claims Against Mithril Capital and Mr. Royan Must Be Arbitrated, and Therefore, Ms. McKellar's Requested Relief Must Be Denied..............6

    B.   Ms. McKellar's Anti-Suit Injunction Is Precluded by Intra-district Comity and the First-to-File Rule.........................................................................................................7

    C.   Nonetheless, Ms. McKellar Cannot Establish That a Preliminary Injunction Is Warranted in This Case................................................................................................9

        1.   Ms. McKellar's California Labor Code § 925 Argument Will Not Succeed on the Merits. ...............................................................................................................9

            a.   § 925 Does Not Apply Because Ms. McKellar Was Not an Employee of Mithril Capital After February 11, 2019. ..........................10

            b.   § 925 Is Inapplicable for Several Additional Reasons.............................13

        2.   Ms. McKellar Has Not Demonstrated a Likelihood of Irreparable Harm. ...........14

        3.   The Balance of the Equities and Public Interest Oppose the Issuance of Ms. McKellar's Anti-Suit Injunction. ....................................................................15

        4.   A Bond Is Appropriate Under the Circumstances. ...............................................15

IV.  CONCLUSION....................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abry Partners V, L.P. v. F&W Acquisition LLC*,
   891 A.2d 1032 (Del. Ch. 2006)..................................................................................14

*Advanced Bionics Corp. v. Medtronic, Inc.*,
   29 Cal. 4th 697 (2002) ...............................................................................................8

*Altbaier v. Down-Lite Int'l, Inc.*,
   No. 3:19-cv-04348-EMC, ECF No. 26 (Aug. 6, 2019) .......................................13

*Arnold v. Mut. of Omaha Ins. Co.*,
   202 Cal. App. 4th 580 (2011) ....................................................................................12

*Bergh v. State of Wash.*,
   535 F.2d 505 (9th Cir. 1976) ..........................................................................8, 9, 15

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ....................................................................................6

*Cherry Creek Mortg. Co. v. Jarboe*,
   2018 WL 6249887 (D. Colo. Nov. 29, 2018) ...........................................................9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ....................................................................................7

*City Antiques, Inc. v. Planned Furniture Promotions, Inc.*,
   2014 WL 3955216 (D. Or. Aug. 12, 2014)................................................................8

*Daly v. Citigroup Inc.*,
   939 F.3d 415 (2d Cir. 2019).......................................................................................7

*Del Mar Avionics v. Quinton Instruments Co.*,
   645 F.2d 832 (9th Cir. 1981) .....................................................................................8

*Down-lite Int'l, Inc. v. Altbaier*,
   2019 WL 3562068 (S.D. Ohio Aug. 6, 2019), *review denied, decision aff'd*, 2019 WL
   4439099 (S.D. Ohio Sept. 17, 2019)...................................................................8, 13

*Dynamex Operations West, Inc. v. Superior Court*,
   4 Cal. 5th 903 (2018) .........................................................................................12, 13

*ECL Grp., LLC v. Mass*,
   2018 WL 949235 (N.D. Tex. Feb. 20, 2018)............................................................9

*El Pollo Loco, Inc. v. Hashim*,
   316 F.3d 1032 (9th Cir. 2003) ...........................................................................11

*Farris v. Seabrook*,
   677 F.3d 858 (9th Cir. 2012) ...............................................................................9

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) (en banc) ..............................................................15

*Genesys Telecomms Labs. Inc v. Morales*,
   2019 WL 5722225 (S.D. Ind. Nov. 5, 2019) ........................................................9

*Gold Coast Search Partners LLC v. Career Partners Inc.*,
   2019 WL 4305540 (N.D. Cal. Sept. 11, 2019) .....................................................8

*Henderson v. Equilon Enters., LLC*,
   40 Cal. App. 5th 1111 (2019) ............................................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ...........................................................................................7

*Iconix, Inc. v. Tokuda*,
   457 F. Supp. 2d 969 (N.D. Cal. 2006) ...............................................................11

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
   544 F. Supp. 2d 949 (N.D. Cal. 2008) .................................................................7

*Karl v. Zimmer Biomet Holdings, Inc.*,
   2018 WL 5809428 (N.D. Cal. Nov. 6, 2018) .....................................................10

*Khazin v. TD Ameritrade Holding Corp.*,
   773 F.3d 488 (3d Cir. 2014)..................................................................................7

*Lara v. Workers' Comp. Appeals Bd.*,
   182 Cal. App. 4th 393 (2010) ............................................................................12

*Lopez v. Brewer*,
   680 F.3d 1068 (9th Cir. 2012) .............................................................................9

*Lyon v. Neustar, Inc.*,
   2019 WL 1978802 (E.D. Cal. May 3, 2019) .............................................7, 9, 14

*Mark Smith, et al. v. Nerium Int'l, LLC, et al.*,
   2019 WL 7195330 (C.D. Cal. Sept. 10, 2019) .....................................................7

*Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos, Inc.*,
   553 F.2d 842 (2d Cir. 1977)..................................................................................5

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS**
**CASE NO. 3:19-cv-07314-CRB**

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ................................................................................................6, 7

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*,
  2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) ..................................................8

*Nationwide Biweekly Admin., Inc. v. Owen*,
  873 F.3d 716 (9th Cir. 2017) ...........................................................................15

*NuVasive, Inc. v. Miles*,
  2018 WL 4677607 (Del. Ch. Sept. 28, 2018) ..................................................9

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ...........................................................................6

*Park Terrace Ltd. v. Teasdale*,
  100 Cal. App. 4th 802 (2002) .........................................................................14

*Pompliano v. Snap Inc.*,
  2018 WL 3198454 (C.D. Cal. Apr. 11, 2018) ..................................................7

*Rampersad v. Rentex Inc.*,
  2017 WL 2876783 (S.D. Cal. Mar. 13, 2017) ..................................................8

*Ratajesak v. New Prime, Inc.*,
  2019 WL 1771659 (C.D. Cal. Mar. 20, 2019) ..................................................7

*Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*,
  415 U.S. 1 (1974) ............................................................................................15

*Republic of the Phil. v. Marcos*,
  862 F.2d 1355 (9th Cir. 1988) .........................................................................10

*Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*,
  455 S.W.3d 573 (Tex. 2014) ..............................................................................5

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations*,
  48 Cal. 3d 341 (1989) ......................................................................................12

*St. Agnes Med. Ctr. v. PacifiCare of Cal.*,
  31 Cal. 4th 1187 (2003) .....................................................................................5

*Valley Cmty. Bank v. Progressive Cas. Ins. Co.*,
  854 F. Supp. 2d 697 (N.D. Cal. 2012) ..............................................................9

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
  967 F. Supp. 2d 1289 (N.D. Cal. 2013) ............................................................7

iii

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ....................................................................................................... 9

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
  2019 WL 5789273 (N.D. Cal. Nov. 6, 2019) ......................................................... 10

**Statutes**

Cal. Evid. Code § 622 ...................................................................................................... 14

Cal. Lab. Code § 925 ...................................................................................... 6, 7, 8, 9, 10, 13, 14

Cal. Lab. Code § 1102.5 ..................................................................................................... 7

Cal. Labor Code § 2750.3 ................................................................................................ 12

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ................................................................. 6

**Rules**

Fed. R. Civ. P. 13 ............................................................................................................... 8

Local Rule 7-2(d) ............................................................................................................. 11

**Other Authorities**

Condition of Employment, *Black's Law Dictionar*y (11th ed. 2019) ............................ 13

Oehmke & Brovins, *Commercial Arbitration* (2019 online ed.) .................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Crystal Scripps McKellar was Mithril Capital Management LLC's ("Mithril Capital") General Counsel until she negotiated and executed a separation agreement terminating her employment on February 11, 2019. At her request, Mithril Capital agreed to retain Ms. McKellar as a consultant. She thereafter was a consultant for Mithril Capital until July 2019, when it was discovered that she had breached three different agreements relating to her separation and consultancy (the "McKellar Agreements"). In October 2019, Mithril Capital and an affiliated entity Mithril GP Employee Feeder LLC ("Mithril Feeder") sued Ms. McKellar in Texas court and Delaware court (the "Mithril Lawsuits") for those breaches and related wrongful conduct.

Ms. McKellar responded by filing this action against Mithril Capital, its Managing General Partner Ajay Royan, and Mithril Feeder (collectively, the "Defendants"). After months of stall tactics in Texas and Delaware, Ms. McKellar now asks the Court to preliminarily enjoin the first-filed Mithril Lawsuits based on a single false premise: Ms. McKellar continued to be an employee of Mithril Capital after her termination on February 11, 2019 and, therefore, California Labor Code section 925 ("§ 925") prevents Defendants from enforcing the McKellar Agreements' choice of law and forum provisions. To summarize, Ms. McKellar seeks a breathtaking order from this Court that enjoins two first-filed cases in other federal districts. She does so to circumvent choice of law and forum provisions that she negotiated and agreed to in exchange for more than $450,000 in severance benefits. Her Motion falls well short of warranting such "an extraordinary and drastic remedy." *Aleut Support Servs., LLC v Stationary Engrs., Local 39*, 131 F. Supp. 3d 965, 969 (N.D. Cal. 2015) (citation omitted).

*First*, as set forth in Defendants' pending Motion to Compel Arbitration and Dismiss or Stay Proceedings, (ECF No. 23), all of Ms. McKellar's claims against Mithril Capital and Mr. Royan, including her whistleblower retaliation claims, are subject to binding and mutual arbitration provisions that also delegate any questions of arbitrability to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."). Therefore, the Court needs not even

reach the merits of the Motion to the extent it concerns either Mithril Capital or Mr. Royan.

**Second**, the age-old principle of intra-district comity and the well-established First-to-File Rule both preclude Ms. McKellar's requested relief. Indeed, the California Legislature did not set out to enable forum shoppers like Ms. McKellar to request extraterritorial injunctions merely by passing § 925. No amount of gamesmanship on her part can change the fact that the Mithril Lawsuits were filed first, concern the same parties, and concern the same issues. *See Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957 (N.D. Cal. 2008) ("Absent an exception to the first-to-file rule, a court of second-filing will defer to a court of first-filing, if the two matters before them exhibit chronology, identity of parties, and similarity of issues.").

**Third**, the Motion does not and Ms. McKellar cannot establish that § 925 applies to the McKellar Agreements. None of them were entered into as "a condition of employment," a fact the Motion completely ignores. Cal. Lab. Code § 925(a). Ms. McKellar—who herself is a sophisticated and experienced attorney—is further estopped from asserting § 925 applicability because she stated that she was represented by counsel during negotiations. *See* § 925(e), *see also* Cal. Evid. Code 622; *cf. Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006) ("Contractually binding, written representations of fact ought to be the most reliable of representations, and a law intolerant of fraud should abhor parties that make such representations knowing they are false."). Even still, no one believed that Ms. McKellar was an employee of Mithril Capital after February 11, 2019, including her: "I have not yet received any payment for my ***contractor work***, though ***it has been a little over a month now that I have been a contractor***. When do you anticipate ***my contractor pay*** will be deposited . . . ?" *See* Declaration of Ajay Royan in Support of Defendants' Opposition to Motion for Preliminary Injunction ("Royan Decl.") Ex. 6 (Jan. 31, 2020). To be sure, a lawyer who, following her termination, receives a courtesy title and is paid handsomely to do essentially no work at all, who performs services for others, and who refers to herself as a contractor cannot be an employee under California law. Therefore, Ms. McKellar fails to establish a likelihood of success on the merits, as well as the other elements required to obtain such an unprecedented and legally baseless injunction.

For the foregoing reasons, the Court should deny the Motion.

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO. 3:19-cv-07314-CRB**

## II.   FACTUAL BACKGROUND

### A.   Ms. McKellar Became General Counsel of Mithril Capital in June 2012 and a Professional Member of Mithril Feeder in March 2014.

Mithril Capital is a successful investment firm that currently manages two venture capital funds with over $1.2 billion under management. *See* Royan Decl. ¶ 1. Mr. Royan is its Managing General Partner. *Id*. From June 2012 until February 11, 2019, Ms. McKellar served as Mithril Capital's General Counsel. *Id.* ¶ 4. Ms. McKellar is a sophisticated and experienced attorney who was an active member of the California State Bar for over 15 years. *See* Decl. of Michael Shipley ("Shipley Decl.") Ex. A (Jan. 31, 2020). By the time Mithril Capital hired her in 2012, she had attended Yale University and Harvard Law School, clerked for a federal district judge, and worked as an associate at two prestigious law firms: Morrison & Foerster LLP and Davis Polk & Wardwell LLP. *Id.* Ex. B.

Mithril Capital paid employees like Ms. McKellar cash compensation. In March 2014, Mithril Feeder, a separate and distinct Delaware LLC, was established to facilitate the award of carried interest generated by a Mithril fund to certain persons, including select employees. *Id.* ¶ 2. On March 28, 2014, Ms. McKellar was admitted to Mithril Feeder as a Professional Member. *Id.* ¶ 3. At the time, she signed an Admission Letter confirming that she would comply with Mithril Feeder's LLC Agreement, including its confidentiality, non-solicitation, non-compete, and non-disparagement provisions. *See* Ex. B-2.[1] Ms. McKellar also consented to jurisdiction in Delaware. *See* Ex. B-1 ¶ 15.07.

### B.   Ms. McKellar's Employment at Mithril Capital Ended on February 11, 2019.

On February 11, 2019, Ms. McKellar's employment at Mithril Capital ended in part because she chose not to move with the firm to Austin, Texas. *See* Royan Decl. ¶ 4. Ms. McKellar received a generous severance package that included $450,000, one year's worth of health benefits under COBRA, and 1.5 additional carried interest points in Mithril Feeder. *See* Ex. E. Ms. McKellar also received a cashier's check for her final pay period in the amount of $22,059.85. *Id.* Ex. 1. During negotiations, Ms. McKellar requested and Mithril Capital agreed that Ms. McKellar could retain a courtesy title for a stipulated period of time while looking for work elsewhere. *Id.* ¶ 6. The parties formalized that arrangement by evenly re-allocating the initially-offered $450,000 severance across a six-page

---

[1] Undesignated references to "Ex." are to exhibits to the January 17, 2020 Declaration of Crystal McKellar in Support of Motion for Preliminary Injunction ("McKellar Decl."). *See* ECF No. 21 Exs. A–V.

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO. 3:19-cv-07314-CRB**

1    Separation Agreement and General Release (the "Separation Agreement") and a twelve-page Consulting

2    Agreement. *Id.*; *see also* Exs. E, F.

3        Ms. McKellar agreed that Texas law would govern both agreements and consented to personal

4    jurisdiction in Texas in the Consulting Agreement. *See* Ex. E at 6; Ex. F ¶¶ 5, 12. To protect Mithril

5    Capital's interests, and in exchange for Ms. McKellar's courtesy title, consulting fee, and severance

6    package, the agreements contain standard confidentiality, non-competition, non-solicitation, and non-

7    disparagement provisions. *See* Ex. E at 4; Ex. F ¶¶ 4.1. Ms. McKellar also agreed to arbitrate any claims

8    arising from or related to either agreement in Travis County, Texas. *See* Ex. E at 5; Ex. F ¶ 13.

9    **C.    Ms. McKellar Negotiated, Reviewed, and Signed the Separation and Consulting Agreements, and Was Well Aware of Their Terms Before Signing.**

10       Ms. McKellar's own evidence proves her eagerness to sign the Separation and Consulting

11   Agreements, and that she had an opportunity to first review their terms. *Compare* Ex. G, *with* ECF No.

12   21 ("PI Mot."), at 13 n.10. The text messages she exchanged with Mr. Royan show that she received the

13   drafts as soon as they were ready, reviewed them, and agreed before signing that they reflected the terms

14   that were negotiated over the course of the day. *Id.* Given her legal acumen, (*see* Shipley Decl. Exs. A,

15   B), Ms. McKellar must have known the significance of the arbitration, choice of law, and choice of

16   forum provisions, and appreciated the consequences of making a contractual representation that she was

17   represented by counsel during negotiations: "***The parties . . . have been represented by their own

18   respective counsel in connection with the negotiation of this Agreement***." Ex. F ¶ 16.

19       Mr. Royan's harmless joke about "Hawaii time" and "Alaska time" was in response to and

20   intended to make light of Ms. McKellar's own insistence to date the agreements as of February 11,

21   2019, not to pressure her into signing. Ex. G; *see also* Royan Decl. ¶¶ 8–9. This fact is proven by Ms.

22   McKellar manually backdating the Consulting Agreement from the 12th to the 11th of February. *See*

23   Exs. F, G. Notably, Ms. McKellar's Motion omits that she was eager to finalize the agreements, which

24   included an award of additional Mithril Feeder carried interest, in advance of Johnson & Johnson's

25   ***$3.4 billion*** purchase of Auris Health, a company in which both of Mithril Capital's managed funds

26   collectively were substantial investors. *See* Royan Decl. ¶ 8. The Auris Health acquisition formally

27   closed on February 12, 2019 and was announced publicly on February 13, 2020. *Id.*; *see also id.* Ex. 2.

28

2

In reality, what Ms. McKellar frames in her motion as "oppressive circumstances" was in fact an attempt by Mithril Capital to work quickly to accommodate her unexpected and urgent request for a courtesy title. *Id.* ¶ 9. There was no deadline by which she needed to sign and the execution date made no difference to Mithril Capital or Mr. Royan. *Id.* ¶ 7. Despite her representations to the contrary, she was thrilled about the result. Indeed, Ms. McKellar stated that she had "[n]egotiated everything she wanted" in a personal text message. *See* Royan Decl. Ex. 12.

### D.    Ms. McKellar Knew, Agreed, and Behaved Like She Was No Longer an Employee of Mithril Capital after February 11, 2019.

Ms. McKellar agreed in the Separation Agreement that she was no longer an employee of Mithril Capital as of February 11, 2019: "*[T]he Company has accepted your resignation with the termination of your employment with the Company effective February 11, 2019*." Ex. E at 1 (emphasis added). She further acknowledged in the Consulting Agreement that she would continue her relationship with Mithril Capital only as an independent contractor: "The Company agrees to hereby engage[] [Ms. McKellar] *as an independent contractor*" and "*[n]othing in this Agreement shall be interpreted or construed as creating or establishing an employment relationship between [Mithril Capital] and [Ms. McKellar]*." Ex. F ¶¶ 1.1, 7 (emphasis added). She agreed to submit monthly invoices to collect her consulting fee. *Id.* ¶ 3. She also agreed that she would be "solely responsible for all taxes, withholdings, and other similar statutory obligations related to payment . . . ." *Id.* ¶ 1.3(a).

Soon after her resignation and termination, Ms. McKellar returned her work cell phone and laptop. *See* Royan Decl. ¶ 10. She separately was provided a new cell phone, e-mail address, and laptop with no access to data and tools customarily provided to Mithril Capital employees. *Id.* Her access to Mithril Capital's key systems and premises was duly revoked. *Id.* She posted an automatic e-mail reply indicating that her e-mail address had changed and providing alternate contacts at Mithril Capital for "legal matter[s]," "investor quer[ies]," or "any other matters." *Id.* Ex. 3. She also resigned from all board positions held as an employee of Mithril Capital, notifying one firm (unbeknownst to anyone at Mithril Capital) that she "had a wonderful experience at Mithril, *but will not be moving to Austin and so my status has necessarily changed*." *Id.* Ex. 4.

Fully understanding the nature of her relationship with Mithril Capital, Ms. McKellar referred to

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO. 3:19-cv-07314-CRB**

herself as a contractor in several e-mails with the firm's benefits department. For example, on March 11, 2019, she stated: "I have not yet received any payment for *my contractor work*, though *it has been a little over a month now that I have been a contractor*. When do you anticipate my *contractor pay* will be deposited . . . ?" *Id.* Ex. 6 (emphasis added). On June 11, 2019, she asked to confirm that she was removed from Mithril Capital's 401(k) employee roster: "Would you mind calling over there *to confirm I am no longer a Mithril employee* so that I can roll over my 401(k)?" *Id.* Ex. 13.

The Consulting Agreement also recognized that "[t]he parties understand and agree that [Ms. McKellar] may and probably will, perform services for others during the term of this Agreement." Ex. F ¶ 7. She did in fact perform services for others. Indeed, she almost immediately began working for an investment fund called Signum Investments. *See* McKellar Decl. ¶ 40. A February 2019 Fact Sheet identifies Ms. McKellar as "responsible for managing the non-investment activities at Signum, including the legal and administrative functions and management of the firm's investor relationships." Royan Decl. Ex. 9. One month later, she explained to a family member in an e-mail from her Signum e-mail address that she was "now a partner in [a] hedge fund" and attached the Fact Sheet, which she planned to "send[] out to prospective investors." *Id.* Ex. 8. She added that her "Mithril address is probably the one I'm checking the least often." *Id.* Then in July 2019, Ms. McKellar announced she was launching a new investment firm—Anathem Ventures—to a list of potential investors that included Mithril Capital's limited partners. *Id.* Ex. 10. She claimed Anathem Ventures had already made two investments and expressed a desire to "explore ways in which we may work together." *Id.* Prior to the announcement, Ms. McKellar had filed trademark applications for Anathem Ventures' name and logo. *Id.* Ex. 11.

**E.     As Intended by the Parties, Ms. McKellar Performed Some Transitional Work Under the Separation Agreement and No Work Under the Consulting Agreement.**

The Separation Agreement required Ms. McKellar to "provide up to three (3) hours per quarter of transition and advisory services . . . as reasonably requested by" Mithril Capital until her additional carried interest fully vested. Ex. E at 2. Under the Consulting Agreement, Ms. McKellar was retained as an "Advisory Managing Director" to generally "undertake advisory services in connection with management of [Mithril Capital's] portfolios." Ex. F ¶ 1.1. Because neither party expected Ms. McKellar to actually perform any work under the Consulting Agreement, it *prohibited*

Ms. McKellar from doing so without instruction by Mr. Royan or other management of the firm. Ex. F ¶ 1.1. The Consulting Agreement also forbade Ms. McKellar from representing she had any authority "to make or direct investments" or "is a member of the Company's management team." *Id.* ¶ 4.3.

During the weeks following her February 11, 2019 termination, Ms. McKellar performed some transitional work for Mithril Capital, as contemplated by the Separation Agreement. Royan Decl. ¶¶ 13–14. The work performed was legal and administrative in nature and almost completely carryover work from prior to her separation. *Id.* ¶ 14. Given Ms. McKellar's nearly seven years of service as the General Counsel of Mithril Capital, the need for a transition was unremarkable. By mid-March, the transition-related work was complete; thereafter Ms. McKellar performed no authorized work for the firm. *Id.* But per the Consulting Agreement, Ms. McKellar continued to submit monthly invoices for her consulting fee into July 2019. *Id.* Ex. 7.

**F.    Rather Than File Counterclaims in the Texas and Delaware Actions, Ms. McKellar Filed This Action and Seeks to Enjoin the First-Filed Mithril Lawsuits.**

In July 2019, Mithril Capital discovered that Ms. McKellar had breached the Separation Agreement, the Consulting Agreement, and the Mithril Feeder LLC Agreement.[2] Accordingly, Mithril Capital and Mithril Feeder terminated these McKellar Agreements for cause.[3] On October 2, 2019, Mithril Capital sued Ms. McKellar in Texas state court. *See* Ex. A (the "Texas Action").[4] On October

---

[2] Defendants have alleged that Ms. McKellar's work for Signum Investments and Anathem Ventures violated the Consulting Agreement's non-compete clause. *See* Ex. F ¶ 4.4. Ms. McKellar could have chosen thousands of other jobs and still complied with her Consulting Agreement, but she instead chose to work for and to found Mithril Capital competitors. Regardless, the fact that she worked openly as in-house counsel for Signum Investments and founded a new investment firm, while still claiming to be "working" for Mithril Capital, further evidences that she was not a Mithril Capital employee.

[3] Ms. McKellar's termination had nothing whatsoever to do with any communication she may or may not have had with the SEC or regulatory entity. Indeed, the Separation Agreement expressly provides that "nothing in this Agreement prevents [Ms. McKellar] from . . . reporting an alleged violation of law to a government administrative agency." Ex. F at 3.

[4] Other than filing a complaint, Mithril Capital took no steps to litigate the Texas Action. The "mere filing of a complaint does not waive" or repudiate a right to later compel arbitration. 3 Oehmke & Brovins, *Commercial Arbitration* § 51:10 (2019 online ed.); *see also Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos, Inc.*, 553 F.2d 842, 845 (2d Cir. 1977); *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1202 (2003); *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 576 (Tex. 2014). If the Court grants Mithril Capital's Arbitration Motion, Mithril Capital intends to dismiss the Texas Action without prejudice and to assert the claims currently alleged in the Texas Action as counterclaims in the arbitration.

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO. 3:19-cv-07314-CRB**

18, 2019, Mithril Feeder sued Ms. McKellar in Delaware Chancery Court. *See* Ex. B (the "Delaware Action"). In response, Ms. McKellar filed this lawsuit against Defendants (the "Action"). Ms. McKellar also removed the Texas and Delaware Actions to federal court. *See* McKellar Decl., ¶ 4. Mithril Feeder's motion to remand in the Delaware Action is still pending. *Id*. ¶ 5.

On January 17, 2019, Defendants moved to compel arbitration under the Separation Agreement and Consulting Agreement's broad arbitration provisions. ECF No. 23. That same day, Ms. McKellar moved to stay, dismiss, or transfer the first-filed Texas and Delaware Actions, and filed this motion for a preliminary injunction. The crux of the Motion is that § 925 prohibits Mithril Capital and Mithril Feeder from enforcing any contractual provision that requires her to litigate or arbitrate outside of California. *See* PI Mot. at 7–12.

## III.   ARGUMENT

### A.   All of Ms. McKellar's Claims Against Mithril Capital and Mr. Royan Must Be Arbitrated, and Therefore, Ms. McKellar's Requested Relief Must Be Denied.

As set forth in Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings, (ECF No. 23), all of Ms. McKellar's claims against Mithril Capital and Mr. Royan must be arbitrated. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") reflects a strong policy favoring the arbitration of disputes). In exchange for over $450,000 in benefits, Ms. McKellar executed the Separation and Consulting Agreements, both of which contain broad arbitration clauses. Ex. E at 5; Ex. F ¶ 13. Far from being coerced, at the time Ms. McKellar indicated that she was thrilled with the terms of these agreements. *See* Royan Decl. Ex. 12. The arbitration provisions are valid under both Texas and California law, and Ms. McKellar cannot assert any colorable defenses to their enforceability.

By "expressly incorporating the AAA arbitration rules," the agreements "clearly and unmistakably" delegate the scope of arbitrability to the arbitrator "" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). Those rules state: "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Rule 6(a), Am. Arbitration Assoc., Employment Arbitration Rules & Mediation Procedures ("AAA

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO. 3:19-cv-07314-CRB**

Rules") (2016), *available at https://bit.ly/30k9hrm*.[5] Thus the Court "possesses no power to decide the arbitrability issue."[6] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

As explained in Section III(C)(1) *infra*, § 925 does not apply to the Separation Agreement, the Consulting Agreement, or the Mithril Feeder LLC Agreement. While § 925 is implicated by the threshold question of where the arbitration should occur (California or Texas), any question about the applicability of § 925 (other than venue) is an issue for the arbitrator to determine. *See Mark Smith, et al. v. Nerium Int'l, LLC, et al.*, 2019 WL 7195330, at *4 (C.D. Cal. Sept. 10, 2019) (finding that the applicability of § 925 was delegated to arbitrator); *Ratajesak v. New Prime, Inc.*, 2019 WL 1771659, at *6 (C.D. Cal. Mar. 20, 2019) (same); *cf. Lyon v. Neustar, Inc.*, 2019 WL 1978802, at *9 (E.D. Cal. May 3, 2019) (when employee agrees to arbitrate, § 925 precludes *only* arbitration outside of California). Therefore, the Court should deny Ms. McKellar's Motion as it relates to Mithril Capital and Mr. Royan, and compel all of her claims against Mr. Royan and Mithril Capital to arbitration.

**B.**    **Ms. McKellar's Anti-Suit Injunction Is Precluded by Intra-district Comity and the First-to-File Rule.**

Ms. McKellar seeks to enjoin Mithril Capital and Mithril Feeder's prosecution of the Texas and Delaware Actions. *See* PI Mot. at iv. But "[a]bsent an exception to the first-to-file rule, a court of second-filing will defer to a court of first-filing, if the two matters before them exhibit chronology, identity of parties, and similarity of issues." *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957 (N.D. Cal. 2008); *see also Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013). Here, the parties are identical and the related nature of the parties'

---

[5] The National Rules for the Resolution of Employment Disputes have been renamed the Employment Arbitration Rules and Mediation Procedures, which state that "[a]ny arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration Rules and Mediation Procedures." AAA Rules, at 17.

[6] In any event, all of Ms. McKellar's claims against Mithril Capital and Mr. Royan undoubtedly "relat[e] to or aris[e] from" her consultancy with Mithril Capital and her subsequent termination. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("relating to" language is "broad and far reaching"); *see also Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 493 (3d Cir. 2014) (holding that Dodd–Frank retaliation claim was arbitrable); *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (same); *Pompliano v. Snap Inc.*, 2018 WL 3198454, at *6 (C.D. Cal. Apr. 11, 2018) (both Dodd–Frank and Cal. Lab. Code § 1102.5 whistleblower claims compelled to arbitration as related to employment); *Moses*, 460 U.S. at 24–25 (courts must resolve any "doubts concerning the scope of arbitrable issues . . . in favor of arbitration").

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:19-cv-07314-CRB**

claims "means that the lawsuits will involve the same witnesses, documents, and testimony." *City Antiques, Inc. v. Planned Furniture Promotions, Inc.*, 2014 WL 3955216, at *4 (D. Or. Aug. 12, 2014). This is especially so because Ms. McKellar's claims are compulsory counterclaims that "arise[] out of the transaction or occurrence that is the subject matter" of the Mithril Lawsuits. Fed. R. Civ. P. 13(a). Consistent with the First-to-File Rule and Defendants' Motion to Compel Arbitration, this Court should instead stay ***its own*** proceedings.

In the Ninth Circuit, "as a matter of comity, a federal court injunction against proceedings in another federal court will rarely be granted[.]" *Del Mar Avionics v. Quinton Instruments Co.*, 645 F.2d 832, 836 (9th Cir. 1981). "When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases." *Bergh v. State of Wash.*, 535 F.2d 505, 507 (9th Cir. 1976); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, 2012 WL 3277222, at *7 (N.D. Cal. Aug. 9, 2012) ("[T]he normal course taken by courts in this Circuit is for the court of the second-filed action to stay its own proceedings in favor of the first-filed action."). Notably absent from Ms. McKellar's brief is any recognition of this heightened standard for anti-suit injunctions. Even were this Action filed first (it was not), under the accepted procedure in the Ninth Circuit, Ms. McKellar's remedy was "a motion to stay filed with the second court rather than . . . a motion to enjoin filed with the first court." *Rampersad v. Rentex Inc.*, 2017 WL 2876783, at *1 (S.D. Cal. Mar. 13, 2017). Indeed, Ms. McKellar has sought to stay the Delaware and Texas Actions, so this motion is as superfluous as it is procedurally improper.

Nor does § 925 compel a different outcome. Extraterritorial anti-suit injunctions are extraordinarily disfavored under California law. *See Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 708 (2002). California's Legislature did not change that policy in enacting § 925. Indeed, courts in California have held that courts elsewhere are capable of applying § 925 in the first instance. *See Gold Coast Search Partners LLC v. Career Partners Inc.*, 2019 WL 4305540, at *1 (N.D. Cal. Sept. 11, 2019) (denying preliminary injunction and granting motion to stay under the *Colorado River* Doctrine). Many courts outside of California have analyzed § 925 free from interference by a California court. *See, e.g.*, *Down-lite Int'l, Inc. v. Altbaier*, 2019 WL 3562068, at *5 (S.D. Ohio Aug. 6, 2019), *review denied,*

8

*decision aff'd*, 2019 WL 4439099 (S.D. Ohio Sept. 17, 2019) (rejecting the defendants' argument that the case involving § 925 should be transferred, noting that "this Court and members of an Ohio jury are quite capable of applying California law").[7] Because § 925 does not authorize extraterritorial injunctions,[8] or otherwise create an exception to the First-to-File Rule or age-old principles of comity, this Court should deny Ms. McKellar's Motion.

## C.   Nonetheless, Ms. McKellar Cannot Establish That a Preliminary Injunction Is Warranted in This Case.

"A preliminary injunction is an extraordinary remedy never awarded as of right[,]" *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) "A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). And because Ms. McKellar demands an anti-suit injunction, she must also establish that this is an "unusual case," where requesting a stay in the other actions is inadequate. *See Bergh*, 535 F.2d at 507. She has not and cannot meet the high bar necessary to merit such extraordinary relief.

### 1.   Ms. McKellar's California Labor Code § 925 Argument Will Not Succeed on the Merits.

As an initial matter, whether Ms. McKellar was an employee of Mithril Capital prior to February 11, 2019 is wholly irrelevant to this Motion. *Contra* PI Mot. at 8. The terms of that relationship were governed by an agreement that was executed nearly five years before § 925's effective date. *See* Ex. C; § 925(f). And the Separation Agreement makes clear that relationship was formally terminated and all

---

[7] *See also Genesys Telecoms Labs. Inc v. Morales*, 2019 WL 5722225, at *7 (S.D. Ind. Nov. 5, 2019); *Cherry Creek Mortg. Co. v. Jarboe*, 2018 WL 6249887, at *4 (D. Colo. Nov. 29, 2018); *NuVasive, Inc. v. Miles*, 2018 WL 4677607, at *3 (Del. Ch. Sept. 28, 2018); *ECL Grp., LLC v. Mass*, 2018 WL 949235, at *9–10 (N.D. Tex. Feb. 20, 2018).

[8] In *Lyon*, 2019 WL 1978802, at *5, a federal court in the Eastern District of California relied on § 925 to enjoin litigation of a petition to compel arbitration in the Eastern District of Virginia. But *Lyon* does not recognize the Ninth Circuit's heightened standard for anti-suit injunctions or even recognize the comity implications of granting an anti-suit injunction that interferes with the jurisdiction of another federal district court. There is thus no reason for this Court to treat *Lyon* as persuasive on the point. *Accord Valley Cmty. Bank v. Progressive Cas. Ins. Co.*, 854 F. Supp. 2d 697, 704 (N.D. Cal. 2012) (district court cases not persuasive authority regarding arguments that are not addressed in them).

9

obligations released on February 11, 2019 in exchange for valuable severance benefits. *See* Ex. E. So the questions here are (1) whether the Separation Agreement, the Consulting Agreement, or the Mithril Feeder LLC Agreement created a new or continued employee–employer relationship that required foreign choice of law or forum "as a condition of employment," and (2) if so, whether Ms. McKellar can void those choice of law and forum provisions under § 925. The answer to both resoundingly is no.

### a. § 925 Does Not Apply Because Ms. McKellar Was Not an Employee of Mithril Capital After February 11, 2019.

§ 925 applies only to contracts between an "employer" and an "employee" that chose non-California law or venue "as a condition of employment." § 925(a)(1)–(2). Courts have recognized that § 925 is inapplicable when plaintiff is an independent contractor—***not*** an employee. *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 2019 WL 5789273, at *3 (N.D. Cal. Nov. 6, 2019), at *3; *Karl v. Zimmer Biomet Holdings, Inc.*, 2018 WL 5809428, at *2 (N.D. Cal. Nov. 6, 2018). Ms. McKellar was not an employee of Mithril Capital after February 11, 2019, so § 925 does not apply.

In order to show a likelihood of success on this issue, Ms. McKellar must come forward with ***evidence*** that she was an employee. *See Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988). Here, the evidence shows that Mithril Capital and Ms. McKellar did not intend to create a new or continued employee–employer relationship after February 11, 2019. The express terms of the Separation Agreement and Consulting Agreement, as well Ms. McKellar's own statements and conduct, establish a common understanding that Ms. McKellar had resigned from her employment and agreed to a termination in exchange for a generous severance package. *See* Exs. E, F; Royan Decl. Exs. 3–13. In a desperate attempt to exploit the employee protections of § 925 to defeat the first-filed Mithril Lawsuits, Ms. McKellar now claims that she was misclassified and, in fact, an employee all along. *See* PI Mot. at 8. But the evidence submitted with the Motion cannot overcome the obvious fact that Ms. McKellar's employment with Mithril Capital ended on February 11, 2019.[9]

Ms. McKellar's evidentiary submission[10] does not prove, by any standard, that she remained an

---

[9] Ms. McKellar's counsel conceded that the compensation she received post-February 11, 2019 was "severance payment" when responding to Mithril Capital's termination letter in July 2019. *See* Ex. O.

[10] Ms. McKellar filed a Verified Amended Complaint on the afternoon of January 30, 2019—the day before Defendants' opposition is due—that is replete with additional falsehoods about the nature of her relationship with Mithril Capital. *See* ECF 40, 40-1. Her counsel refused Defendants' request for a

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:19-cv-07314-CRB**

employee. It demonstrates, instead that, per the Separation Agreement, Ms. McKellar completed some carryover work from her time as General Counsel and performed some transitional tasks to off-board her work to existing employees in the weeks following her termination. *See* Exs. I–N. Exhibit I concerns Ms. McKellar's ability to access remotely the resources necessary to complete her carryover work on her new Mithril devices. Exhibit J concerns a one-off request for the user log-in credentials to access a regulator's website. Exhibit K shows that Ms. McKellar was told she did not need to attend future investment team calls. Exhibits L and M concern a right of first refusal for one of Ms. McKellar's personal investments. Exhibit N concerns a one-off request to review edits to a non-disclosure agreement as a part of her transition services, to which Ms. McKellar merely responded "[l]ooks fine." It further shows that Ms. McKellar offered her assistance on March 19, 2019, but no one from Mithril Capital responded. *Id.* Her role already had been fully wound down and transitioned by then.

These documents do not establish that Ms. McKellar was an employee, or even that she performed any substantive work at all besides the kind required under the Separation Agreement. None of these documents show Ms. McKellar providing or being asked to provide ***any*** "advisory services in connection with the management of the Company's portfolios." Ex. F ¶ 1.1. This, of course, is consistent with the Consulting Agreement's intended purpose: to provide a courtesy title to Ms. McKellar and to prevent her from doing any unauthorized work on behalf of the firm. *Id.* In reality, the limited wind-down work that Ms. McKellar did perform was legal in nature and almost completely carryover work from before her termination on February 11, 2019. *See* Royan Decl. ¶ 14. By mid-March 2019, Mithril Capital's requests for transition-related work ceased and Ms. McKellar's authorized work for the firm stopped. *Id.* She nonetheless continued to submit monthly invoices for her consulting fee through July 2019. *Id.* Ex. 7. And, as contemplated by the Consulting Agreement, she performed

reasonable extension without an unjustifiable pro quo concerning Defendants' Motion to Compel Arbitration. *See* Shipley Decl. Ex. C. To the extent Ms. McKellar intends to rely on the Verified Amended Complaint as ***evidence*** on this motion, it was not properly submitted with her motion papers and accordingly violates Civil Local Rule 7-2(d). To the extent Ms. McKellar uses it for reply, Defendants object to the use of any evidence on reply, particularly given that the facts added to the complaint existed at the time she filed her motion. *See Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 976 (N.D. Cal. 2006) (sustaining objection to new evidence on reply in preliminary injunction motion). At minimum, Defendants should be permitted an opportunity to respond with more than a twenty-four hour lead time. *See El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040–41 (9th Cir. 2003).

services for others. *Id.* Exs. 8–11. Accordingly, a lawyer who, following her termination, receives a courtesy title and is paid handsomely to do essentially no work at all, who "performs services for others," and who refers to herself as a contractor cannot be an "employee" under California law.

Under California Labor Code § 2750.3 the employee-independent contractor distinction will be governed by one of two decisions: *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018) ("*Dynamex*"); or *S. G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341, 351 (1989) ("*Borello*"). The statute requires courts to apply *Borello* when the work of a licensed, practicing attorney is at issue. *See* Cal. Lab. Code § 2750.3(a)–(b). Therefore, because Ms. McKellar was a licensed, practicing attorney during the events at issue, *Borello* applies.

Under the *Borello* test, which adopted the common law test from the Restatement of Agency, the ultimate question is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.* at 350. Courts applying *Borello* have concluded that the failure to address the "means and manner to accomplish the result" in an employment agreement favors a finding that the worker is an independent contractor. *See, e.g.*, *Lara v. Workers' Comp. Appeals Bd.*, 182 Cal. App. 4th 393, 399 (2010).[11]

The Consulting Agreement does not discuss the manner or means for performing work because no one expected Ms. McKellar to actually perform any work under the agreement. Indeed, the agreement includes language that prevented Ms. McKellar from providing any services unless otherwise instructed. *See* Ex. F ¶¶ 1.1, 4.3. And while the Separation Agreement contemplated that she might perform up to three hours of work in a ninety-day period—for a total of ***twelve hours per year***—that kind of commitment falls well short of establishing that Ms. McKellar was an employee working under

---

[11] Additional *Borello* factors are: (1) "whether the one performing services is engaged in a distinct occupation or business"; (2) "the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision"; (3)"the skill required in the particular occupation"; (4) "whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work"; (5) "the length of time for which the services are to be performed"; (6) "the method of payment, whether by the time or by the job"; (7) "whether or not the work is a part of the regular business of the principal"; and (8) "whether or not the parties believe they are creating the relationship of employer–employee." 48 Cal. 3d at 351. Notably, "a termination at-will clause for both parties . . . is not by itself a basis for changing that relationship to one of an employee." *Arnold v. Mut. of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 589 (2011).

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO. 3:19-cv-07314-CRB**

Mithril Capital's control. *See* Ex. E at 2.

Further, the plain language of the Consulting Agreement and the facts in evidence establish that Ms. McKellar: (1) was expressly classified as an independent contractor (Ex. F ¶ 7); (2) had an engagement of twelve months with an optional renewal period (*Id.* ¶ 2.1); (3) was solely responsible for all taxes and withholdings (*Id.* ¶ 1.3(a)); (4) could work for others except those mentioned in the non-compete clause (*Id.* ¶ 4.4); (5) submitted monthly invoices to collect her consulting fee (Royan Decl. Exs. 7, 13); (6) performed ***no authorized work at all*** for Mithril Capital after mid-March 2019, despite collecting $18,750 per month (*Id.* ¶ 14); and (7) was the legal and compliance officer of Signum Investments and the founding and managing partner of Anathem Ventures (*Id.* Exs. 8–11). Most importantly, the parties never believed they were forming an employee–employer relationship. *Id.* Exs. 3–6, 13; *see also* Exs. E, F.[12] These facts all favor a finding that Ms. McKellar was an independent contractor.

### b.   § 925 Is Inapplicable for Several Additional Reasons.

For § 925 to apply, the choice of law or forum provision in question must also be "a condition of employment."[13] § 925(a). Ms. McKellar does not address this key element of the statute anywhere in her Motion, which cannot be met by any of the McKellar Agreements. The Texas law and forum selection provisions in the Separation Agreement and Consulting Agreements were ***conditions of severance, not employment***. And the Delaware law and forum selections in Mithril Feeder's LLC Agreement were a ***condition of membership*** in an LLC to collect carried interest points, which is wholly separate from Ms. McKellar's relationship with Mithril Capital. *See Down-lite Int'l, Inc.*, 2019 WL 3562068, at *3 (rejecting the application of § 925 to a shareholder agreement); *Altbaier v. Down-Lite Int'l, Inc.*, No. 3:19-cv-04348-EMC, ECF No. 26 (Aug. 6, 2019) (finding the same in a parallel case). Therefore, none of the choice of law or forum provisions in the McKellar Agreements were "a condition of employment" and § 925 cannot apply.

But even if Ms. McKellar was an employee of Mithril Capital after February 11, 2019 (she was

---

[12] The outcome would not be any different under *Dynamex. See Henderson v. Equilon Enters., LLC*, 40 Cal. App. 5th 1111, 1127 (2019).

[13] A "condition of employment" is plainly understood as "[a] qualification or circumstance required for obtaining or keeping a job." Condition of Employment, *Black's Law Dictionary* (11th ed. 2019).

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO. 3:19-cv-07314-CRB**

not), and one or more of the McKellar Agreements were entered into as "a condition of employment" (they were not), § 925 still does not apply because of the exception for contracts where the employee is in fact individually represented by legal counsel in negotiating the agreement. *See* § 925(e). The Consulting Agreement recites that "[t]he parties . . . ***have been represented by their own respective counsel in connection with the negotiation of this Agreement***." Ex. F ¶ 16 (emphasis added). Ms. McKellar—an attorney with impeccable credentials and years of experience—now conveniently claims that she was not "in fact" represented by counsel and that this language was mere "boilerplate." PI Mot. at 13. But unlike the plaintiff in Ms. McKellar's primary case, *Lyon*, 2019 WL 1978802, at *1, she did not merely suggest during negotiations that she was represented by counsel as a means of "posturing"; she affirmatively represented in a written contract that she was "in fact" represented.

While a party to a contract is not estopped from "posturing" during negotiations, she is certainly estopped from denying her own fraudulent statements in the contract: "Contractually binding, written representations of fact ought to be the most reliable of representations, and a law intolerant of fraud should abhor parties that make such representations knowing they are false." *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006). California Evidence Code section 622 codified the common-law doctrine of estoppel by contract, confirming that "[t]he facts recited in a written instrument are conclusively presumed to be true as between the parties thereto[.]" Cal. Evid. Code § 622; *see also Park Terrace Ltd. v. Teasdale*, 100 Cal. App. 4th 802, 806 (2002) (when the legality of loans depended on whether they were "arranged" by a licensed real estate broker, recitation in notes "that a licensed real estate person 'arranged' the obligation" created conclusive presumption under § 622). Therefore, as a matter of California law, Ms. McKellar cannot contest that she was represented by counsel and the § 925(e) exception applies.

### 2. Ms. McKellar Has Not Demonstrated a Likelihood of Irreparable Harm.

In exchange for valuable consideration of over $450,000, Ms. McKellar agreed that the Separation and Consulting Agreements would be governed by Texas law and to submit to Texas jurisdiction. *See* Ex. E at 5; Ex. F ¶ 13. In exchange for valuable consideration of potentially millions of dollars (Ms. McKellar alleges $15 million), Ms. McKellar agreed that the terms of her Mithril Feeder membership would be governed by Delaware law and that she would submit to the jurisdiction of

14

Delaware federal and state courts. *See* Ex. B-1 ¶ 15.07. She now suspiciously claims irreparable harm for having to litigate outside of California, even though she has retained counsel from Texas to represent her in ***all three actions***, including this Action. Moreover, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 735 n.20 (9th Cir. 2017) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974)).

Ms. McKellar's claim of irreparable harm is further undercut by her ample delay in seeking relief. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc). The Texas action was filed on October 7 and the Delaware Action on October 18, 2019. She, however, waited a month to file this lawsuit. And then she did not move for a preliminary injunction for another sixty days. Nothing stopped Ms. McKellar from moving more quickly. Indeed, by waiting for months to file her motion and simultaneously moving for stays in the Delaware and Texas Actions, Ms. McKellar has exposed the courts to a risk of inconsistent rulings. Ms. McKellar has failed to establish irreparable harm.

### 3.    The Balance of the Equities and Public Interest Oppose the Issuance of Ms. McKellar's Anti-Suit Injunction.

There is a significant public interest in maintaining comity between co-equal federal courts. *See Bergh*, 535 F.2d at 507. Given that Ms. McKellar has also moved for stays in the Delaware and Texas Actions, an injunction here is unnecessary and poses risks of inconsistent rulings and interference with the jurisdiction of the courts in the first-filed cases. Moreover, Defendants have an ample interest in litigating in the jurisdictions where the parties consented to, where they elected to file, and where they filed before Ms. McKellar filed this Action. Thus, both the balance of the equities and public interest merit denial of Ms. McKellar's anti-suit injunction.

### 4.    A Bond Is Appropriate Under the Circumstances.

A bond is appropriate, especially given the extraordinary relief Ms. McKellar is seeking and the restrictive effect it will have on Defendants' right to litigate cases in courts of proper jurisdiction. Defendants respectfully request that the court set a $100,000 bond.

## IV.    CONCLUSION

For the foregoing reasons, Defendants request that the Court deny the Motion.

15

1    DATED: January 31, 2020                    Respectfully submitted,

2                                               KIRKLAND & ELLIS LLP

3                                               /s/ Mark C. Holscher
                                                ─────────────────────────────
4                                               Mark C. Holscher (SBN 139582)
                                                mark.holscher@kirkland.com
5                                               Michael Shipley (SBN 233674)
                                                michael.shipley@kirkland.com
6                                               Edward Hillenbrand (SBN 310872)
                                                edward.hillenbrand@kirkland.com
7                                               KIRKLAND & ELLIS LLP
                                                555 South Flower Street
8                                               Los Angeles, California 90071
                                                Telephone:    (213) 680-8400
9                                               Facsimile:    (213) 680-8500

10                                              Rebekah Sills McEntire (admitted *pro hac
                                                vice*)
11                                              rebekah.mcentire@kirkland.com
                                                KIRKLAND & ELLIS LLP
12                                              609 Main Street, Suite 4600
                                                Houston, Texas 77002
13                                              Telephone:    (713) 836-3600
                                                Facsimile:    (713) 836-3601
14
                                                *Attorneys for Defendants*
15                                              *Mithril Capital Management LLC,*
                                                *Mithril GP Employee Feeder LLC, and*
16                                              *Ajay Royan*

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO. 3:19-cv-07314-CRB**