EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (Bar No. 264863)
(ianshelton@eversheds-sutherland.com)
500 Capitol Mall, Suite 2350
Sacramento, California 95814
Telephone:     (916) 844-2965
Facsimile:      (916) 241-0501

EVERSHEDS SUTHERLAND (US) LLP
David A. Baay (admitted *pro hac vice*)
(davidbaay@eversheds-sutherland.com)
1001 Fannin, Suite 3700
Houston, Texas 77002
Telephone:     (713) 470-6100
Facsimile:      (713) 654-1301

Attorneys for Plaintiff Crystal McKellar

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| CRYSTAL SCRIPPS MCKELLAR,<br><br>              Plaintiff,<br><br>        vs.<br><br>MITHRIL CAPITAL MANAGEMENT LLC,<br>MITHRIL GP EMPLOYEE FEEDER LLC,<br>and AJAY ROYAN,<br><br>              Defendants. | CASE NO. 3:19-cv-07314-CRB<br><br>Hon. Charles R. Breyer<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:        February 28, 2020<br>Time:        10:00 a.m.<br>Courtroom:   6 (17th Floor)<br>Address:     San Francisco Courthouse<br>             450 Golden Gate Avenue<br>             San Francisco, CA 94102 |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 4

    A. The arbitration provisions are waived by litigation conduct, unenforceable,
       inapplicable to Feeder, and do not preclude application of Section 925. ...................... 4

    B. The injunction is not prohibited by intra-district comity or the first-filed rule. ................... 5

    C. McKellar has shown that a Section 925 injunction is warranted. ....................................... 7

       1. McKellar has demonstrated a likelihood of success on the merits............................... 7

          i. McKellar was a Mithril employee through her termination. .................................... 7

          ii. The contracts were conditions of McKellar's employment................................... 11

          iii. McKellar was not in fact individually represented by counsel in negotiating
              the terms of the contracts. ............................................................................ 13

       2. McKellar has demonstrated a likelihood of irreparable harm....................................... 15

       3. The balance of equities and public interest factors support an injunction.................... 15

    D. A bond is not appropriate................................................................................................. 15

III. CONCLUSION .............................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cherry Creek Mortg. Co. v. Jarboe*,
    2018 WL 6249887 (D. Colo. Nov. 29, 2018) ............................................................... 6

*Citizens Bus. Bank v. Gevorgian*,
    218 Cal. App. 4th 602 (2013) ...................................................................................... 14

*City of Santa Cruz v. Pac. Gas & Elec. Co.*,
    82 Cal. App. 4th 1167 (2000) ...................................................................................... 14

*Down-lite Int'l, Inc. v. Altbaier*,
    2019 WL 3562068 (S.D. Ohio Aug. 6, 2019) .......................................................... 6, 11

*ECL Grp., LLC v. Mass*,
    2018 WL 949235 (N.D. Tex. Feb. 20, 2018) ............................................................... 7

*Friedman v. Glob. Payments Inc.*,
    2019 WL 1718690 (C.D. Cal. Feb. 5, 2019) ............................................................. 11

*Inherent.com v. Martindale-Hubbell*,
    420 F. Supp. 2d 1093 (N.D. Cal. 2006) ................................................................... 5, 6

*Lyon v. Neustar, Inc.*,
    2019 WL 1978802 (E.D. Cal. May 3, 2019) ........................................................ *passim*

*Narayan v. EGL, Inc.*,
    616 F.3d 895 (9th Cir. 2010) ...................................................................................... 10

*Nationwide Biweekly Admin., Inc. v. Owen*,
    873 F.3d 716 (9th Cir. 2017) ...................................................................................... 14

*NuVasive, Inc. v. Miles*,
    2018 WL 4677607 (Del. Ch. Sept. 28, 2018) .............................................................. 7

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) .......................................................................................... 6

*Perez v. Performance Food Group, Inc.*,
    2017 WL 6940526 (C.D. Cal. Dec. 15, 2017) ........................................................... 14

*S.G. Borello & Sons, Inc., v. Dep't of Indus. Relations*,
    48 Cal.3d 341 (1989) .................................................................................................. 10

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
    967 F. Supp. 2d 1289 (N.D. Cal. 2013) ...................................................................... 6

**Statutes**

28 U.S.C. § 1404.............................................................................................................4, 5, 6

Cal. Lab. Code § 925 ....................................................................................... *passim*

California Evidence Code § 622.................................................................... 14

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# I.  INTRODUCTION

The Court should grant the motion for preliminary injunction because Plaintiff Crystal McKellar is likely to succeed on the merits.  She was an employee of Defendant Mithril Capital Management LLC ("Mithril") who continued to perform the same non-legal job functions before and after her unlawful reclassification on February 11, 2019.  Dkt. 1 (Complaint) ¶¶ 25–27; Dkt. 21-1 (McKellar Declaration) ¶¶ 45–70; Dkt. 40 (First Amended Complaint) ¶¶ 246–56.

Mithril argues that McKellar was not an employee because she is an attorney, but attorneys are often employees (Mithril admits that McKellar was an employee when she served as Mithril's general counsel for seven years) (Dkt. 44 at 1), and the Consulting Agreement states that McKellar would continue in her *non-legal* role as Managing Director after her reclassification.  Dkt. 22-8 (Consulting Agreement) ¶ 1.1 & Ex. C.  If McKellar was an employee before the reclassification, as Mithril admits, then she was an employee afterwards doing the same job with the same title.  Dkt. 44 at 1; Dkt. 21-1 ¶¶ 45, 56; Dkt. 22-10.

The only testimonial evidence submitted by Mithril in support of its contention that McKellar was not an employee is 4 conclusory paragraphs in the declaration of Defendant Ajay Royan.  Dkt. 44-5 ¶¶ 10, 12, 13, 14.  However, Royan has no personal knowledge of McKellar's work during this time period,[1] and Mithril fails to submit a declaration from John Kingsbury— McKellar's supervisor who actually assigned her work.  Dkt. 40 ¶¶ 246–56; *see* Dkt. 21-1 ¶¶ 60– 70.  The allegations in McKellar's Original Complaint (Dkt. 1 ¶¶ 25–28) and Verified First Amended Complaint (Dkt. 40 ¶¶ 226–56), and the evidence attached to the motion for preliminary injunction, including the exhibits to her declaration (Dkt. 21-1 ¶¶ 27, 45–70), establish McKellar's employee status under both *Borello* and *Dynamex*.  The fact that McKellar referred to herself as a contractor when communicating with Mithril about her employee benefits on two occasions—a label that Mithril gave her—does not make her one.  Dkt. 44-5, Exs. 6 & 13.  Instead, the nature of her work controls.

---

[1]   Pursuant to L.R. 7-3(c), McKellar objects to paragraphs 10, 12, 13 and 14 of Royan's declaration concerning McKellar's work after February 11, 2019 for lack of foundation and personal knowledge.  McKellar performed her work at the direction of Kingsbury—Royan's Chief of Staff—not Royan.  Royan does not testify that he was personally involved in McKellar's day-to-day work activities between February 11, 2019 and July 17, 2019.  Dkt. 44-5.  He was not.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   Mithril's argument that the contracts did not relate to the "conditions of employment" is

2   meritless. Dkt. 44 at 13. The Separation Agreement (Dkt. 22-7), Consulting Agreement (Dkt. 22-

3   8), and LLC Agreement (Dkt. 22-3) addressed the most important condition of McKellar's

4   employment—her compensation. She could not be paid her salary unless she agreed to the non-

5   California choice of law and choice of forum provisions in the Separation and Consulting

6   Agreements, and she could not be paid her carried interest unless she agreed to the same unlawful

7   provisions in her Admission Letters and the LLC Agreement. Dkts. 22-3–22-8.

8   The Court should also reject Mithril's invocation of the exception found in Section 925(e),

9   which applies only when the employee is *in fact* individually represented by legal counsel in

10  negotiating the terms of the contracts. McKellar pleads that she was not, and she describes in

11  detail the oppressive circumstances of the execution of the contracts, which deprived her of any

12  chance to retain her own employment counsel. Dkt. 1 ¶¶ 134–44; Dkt. 21-1 ¶¶ 47–53; Dkt. 40 ¶

13  233–39. Mithril obliquely suggests that the exception applies because McKellar is an attorney

14  who negotiated on her own behalf before receiving the contracts, but the plain language of the

15  statute does not exempt attorneys from coverage, and it requires negotiation of contract terms.

16  Dkt. 44-5 ¶¶ 6-7. Section 925 states that the "employee" must "in fact" be represented by "legal

17  counsel" in "negotiating" terms. Cal. Lab. Code § 925(e). The use of the different terms

18  "employee" and "legal counsel" shows that they must be different people, and this fact is

19  confirmed by the legislative history of the statute. Mithril claims that McKellar is bound by the

20  false statement of legal representation in the adhesive, take-it-or-leave-it contract that it drafted,

21  but California courts have rejected this position.

22  As to the likelihood of irreparable harm, the balance of equities, and the public interest, the

23  court in *Lyon v. Neustar, Inc*., 2019 WL 1978802 (E.D. Cal. May 3, 2019) found these factors

24  satisfied based on much less egregious facts than those existing here. McKellar has pleaded a

25  compelling case of securities fraud, retaliatory termination, a public relations ("PR") smear

26  campaign, and continued retaliation by means of multi-jurisdictional litigation. Dkts. 1 & 40. If

27  the equities do not support the issuance of an injunction in these extreme circumstances, it is

28  unclear when an injunction would ever be warranted.

1    Unable to contradict these facts, Mithril makes two legal arguments in an attempt to avoid

2    Section 925.  Neither have merit, and they contradict each other.

3    First, Mithril argues that "the Court needs not even reach the merits of the Motion to the

4    extent it concerns either Mithril Capital or Mr. Royan" because McKellar's claims "are subject to

5    binding and mutual arbitration provisions that also delegate any questions of arbitrability to the

6    arbitrator."  Dkt. 44 at i–ii.  Mithril and Royan waived the arbitration provisions at issue through

7    their litigation conduct, and those provisions are unconscionable under California law.  Dkt. 43.

8    There is no delegation clause in the arbitration provisions or the rules referenced within them.  *Id.*

9    9–11.  And even Mithril concedes in its motion to compel arbitration that the Court must decide

10   questions of "arbitral venue" under Section 925 because the Court must direct that the case be

11   adjudicated somewhere, whether through litigation or arbitration.  Dkt. 23 at 9 n.7.  The Court

12   cannot do that without determining whether the statute applies.  The arbitration provisions do not

13   moot this motion even assuming those provisions are not waived and unenforceable.

14   Second, Mithril argues that "the age-old principle of intra-district comity and the well-

15   established First-to-File Rule both preclude Ms. McKellar's requested relief."  Dkt. 44 at ii.  As an

16   initial matter, Mithril's argument invoking the first-filed rule defeats its argument seeking to

17   compel arbitration.  Mithril and Royan have acted inconsistently with their right to arbitrate by

18   filing the Texas Action *and continuing to litigate it to the present day*, seeking to compel

19   arbitration of McKellar's second-filed California Action *asserting the same claims* raised in the

20   Texas Action, and then relying on the pendency of their first-filed litigation *as a ground to deny*

21   *McKellar the substantive relief sought in her second-filed litigation*.  To add insult to injury,

22   Mithril says that if arbitration is compelled, then it will dismiss the Texas Action it is now relying

23   on to deny McKellar an injunction regarding the venue of that very dispute.  It is hard to imagine a

24   clearer example of waiver and gamesmanship.  Mithril pretends the Texas Action does not exist

25   for purposes of waiver but affirmatively relies on it to defeat a preliminary injunction.

26   Mithril next accuses McKellar of being a "forum shopper[]," (*id.*) despite the fact that

27   Mithril committed securities fraud, terminated McKellar for reporting it to the SEC, and then

28   preemptively sued McKellar in two anticipatory declaratory judgment lawsuits as part of a cynical

PR campaign to publicly disparage a whistleblower.  Dkt. 21-1 ¶¶ 28, 32; Dkt. 40 ¶¶ 202–25.  Not surprisingly, these two rules are not as rigid as Mithril suggests.  Several exemptions to the first-filed rule apply here, including those related to anticipatory lawsuits and bad faith.  Courts in this district do not apply the rule when all the 28 U.S.C. § 1404 factors strongly favor the second-filed forum, as they do here.

As for intra-district comity, Mithril stipulated to a stay in the Texas Action, and the Texas court is specifically waiting for a ruling from this Court before proceeding.  Shelton Reply Decl. Ex. 1.  In Delaware, McKellar has requested a similar stay, and to date, the Delaware court has expressed no interest in deciding issues that have been more fulsomely briefed before this Court. *Lyon v. Neustar, Inc.* disproves Mithril's blanket position that injunctions are not authorized under Section 925 or are "unprecedented."  2019 WL 1978802, at *10.  Indeed, the statute expressly provides for "injunctive relief."  Cal. Lab. Code § 925(c).  The Court should grant the motion.

## II.  ARGUMENT

### A.  The arbitration provisions are waived by litigation conduct, unenforceable, inapplicable to Feeder, and do not preclude application of Section 925.

In opposing this motion for preliminary injunction, Mithril invokes the arbitration clauses in the Separation and Consulting Agreements.  Dkt. 44 at 6–7.  This argument fails for four reasons:  (1) Mithril and Royan waived the arbitration clauses, (2) the arbitration clauses are unconscionable and unenforceable, (3) Mithril admits the Court still must decide the proper arbitral venue under Section 925 even if the arbitration provisions apply, and (4) Mithril admits that the arbitration clauses do not apply to claims against Feeder or the Delaware Action.

This case presents a textbook example of waiver by litigation conduct.  Dkt. 43 at 4–9. After retaliating against McKellar for her cooperation with the SEC, Mithril and Royan elected to waive the arbitration provisions in its own contracts and publicly sue McKellar in Texas state court on October 2, 2019, seeking "monetary relief over $1,000,000" for breach of contract.  Dkt. 23-9 (Texas complaint) ¶ 10; Dkt. 40 ¶¶ 202–03.  Mithril and Feeder then used their anticipatory lawsuits as part of a choreographed, PR smear campaign.  Dkt. 40 ¶¶ 207–09; 219–20, 225. McKellar incurred huge legal fees defending herself, including the removal of the Texas and

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Delaware Actions, extensive remand briefing in the Delaware Action, the Original and First Amended Complaint in the California Action, two motions to stay, dismiss, or transfer in the Texas and Delaware Actions, the motion for preliminary injunction and multiple sets of discovery in the California Action,[2] and the arbitration briefing in the California Action when Mithril admits that it could have demanded arbitration of all non-Feeder claims to begin with. *Id.* ¶¶ 220–25. All of these motions remain pending. All the while Mithril continues to prosecute its Texas Action asserting the *same claims* that it seeks to compel in this Court, for the purpose of previewing the Court's legal rulings and maintaining the perceived advantage of its first-filed status in Texas. *Id.* ¶ 225. Mithril's gamesmanship is not hypothetical. Indeed, Mithril now affirmatively relies on the first-filed rule to deny the substantive relief McKellar seeks in this litigation.

Mithril tries to avoid application of Section 925 by arguing that the arbitration clause delegated issues of arbitrability to the arbitrator, but arbitral *venue* is not an arbitrability issue, as Mithril admits (Dkt. 44 at 7), and the arbitration provisions in the Separation and Consulting Agreements do not contain or incorporate a delegation clause. Dkt. 43 at 9–11; *see* Dkts. 22-7 & 22-8. Mithril argues that "any question about the applicability of § 925 (other than venue) is an issue for the arbitrator to determine," but this hair-splitting makes no sense. Dkt. 44 at 7. To determine venue under Section 925, the Court must decide whether the statute applies.

**B. The injunction is not prohibited by intra-district comity or the first-filed rule.**

The Court should reject Mithril's argument that intra-district comity or the first-filed rule bar the injunction for the following reasons: (1) the first-filed rule is discretionary and governed by equitable principles, (2) the first-filed rule does not apply because the Texas and Delaware actions were anticipatory lawsuits filed in bad faith for ulterior purposes, (3) the first-filed rule does not apply because the Section 1404 factors weigh heavily in favor of the California Action, and (4) intra-district comity does not bar the injunction because the Texas and Delaware courts are waiting on this Court to adjudicate the motions before it.

Courts decline to apply the first-filed rule for reasons of equity, when the filing of the first

---

[2] McKellar filed her motion for preliminary injunction (Dkt. 21) *before* Mithril filed its motion to compel arbitration (Dkt. 23). The latter motion was the first notice of Mithril's intent to arbitrate.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

suit evidences bad faith, anticipatory suit, or forum shopping. *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006). The anticipatory suit exception is applicable here because McKellar informed Mithril four days after her termination that it had unlawfully retaliated against her in violation of Dodd-Frank (Dkt. 22-17), and Mithril and Feeder preemptively filed suit in Texas and Delaware seeking, in addition to money damages, declaratory judgments that they had done nothing wrong. Dkt. 23-9 ¶¶ 64–68; Dkt. 23-11 (Delaware Complaint) ¶¶ 64–74; *see Inherent.com*, 420 F. Supp. 2d at 1100 (denying to apply first-filed rule because the first lawsuit was anticipatory). Bad faith is further established by Mithril's PR smear campaign against McKellar, in which Royan, among other things, announced onstage at a major technology conference that he had filed the Texas Action to "make public" his accusations against her. Dkt. 43 at 6–9; Dkt. 40 ¶¶ 207–08, 219–20, 225.

Courts also decline to apply the first-filed rule where the Section 1404(a) balance of convenience weighs in favor of the later-filed action. *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292–93 (N.D. Cal. 2013). "In appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982). The 1404(a) factors weigh heavily in favor of this Court adjudicating the claims. Dkt. 40 ¶¶ 257–290.

Defendants claim that § 925 does not authorize extraterritorial injunctions, but *Lyon* contradicts this argument. Dkt. 44 at 9 n. 8; *Lyon*, 2019 WL 1978802, at *10. Defendants argue that *Lyon* "enjoin[ed] litigation of a petition to compel arbitration in the Eastern District of Virginia." Dkt. 44 at 9 n. 8. But the injunction was broader than that. The *Lyon* court enjoined defendant from continuing to litigate its petition and arbitration (except for dismissing or staying such actions), filing any new petitions to compel arbitration in any jurisdiction relating to the non-compete and non-solicitation provisions, and pursuing "any litigation or arbitration outside of the State of California against plaintiff relating to either the 2019 employment agreement or the 2018 separation agreement." *Lyon*, 2019 WL 1978802, at *10. The fact that federal courts outside of

1    California have considered Section 925 has no bearing on McKellar's present motion.[3]

2          As to intra-district comity, Mithril stipulated to stay the Texas Action pending this Court's

3    ruling on the motion for preliminary injunction and the motion to compel arbitration, and the

4    Texas court granted the stipulated stay and instructed the parties to immediately inform the Court

5    when this Court takes action on the motions.  Shelton Reply Decl. Ex. 1.  Ruling on the motion, as

6    the Texas court expects, will further intra-district comity, not delay it.  McKellar has similarly

7    sought a stay of the Delaware Action, and the Delaware court has expressed no interest in

8    preemptively deciding the issues before this Court.

9          **C. McKellar has shown that a Section 925 injunction is warranted.**

10               **1. McKellar has demonstrated a likelihood of success on the merits.**

11                    **i.    McKellar was a Mithril employee through her termination.**

12         Defendants argue that the fact that McKellar was an employee of Mithril prior to February

13   11, 2019 is "wholly irrelevant to [the PI Motion]," because the employment agreement was

14   executed "nearly five years before § 925's effective date."  Dkt. 44 at 9.  This ignores that Section

15   925 applies to employment contracts "entered into, *modified*, or extended on or after January 1,

16   2017."  Cal. Lab. Code § 925(f) (emphasis added).  The *Lyon* court found Section 925 applied to

17   an employment agreement modified by a separation agreement entered after January 1, 2017.

18   2019 WL 1978802, at *7.  Since the choice of law and forum selection provisions in the February

19   11, 2019 Separation Agreement modified McKellar's employment agreement (which designated

20   California law and forum),[4] McKellar's employment agreement is covered by Section 925.

21         McKellar's status as Mithril's employee prior to February 11, 2019 and the evidence she

22   has provided regarding her job functions before and after this date shows that she was a Mithril

23   _____

24   [3] *Down-lite Int'l, Inc. v. Altbaier*, 2019 WL 3562068, at *3 (S.D. Ohio Aug. 6, 2019), *review
     denied decision aff'd*, 2019 WL 4439099 (S.D. Ohio Sept. 17, 2019) (Section 925 did not apply to
     shareholder agreement with non-employee signatories); *Cherry Creek Mortg. Co. v. Jarboe*, 2018
25   WL 6249887, at *4 (D. Colo. Nov. 29, 2018) (Section 925 did not apply to contract entered before
     January 1, 2017); *NuVasive, Inc. v. Miles*, 2018 WL 4677607, at *4 (Del. Ch. Sept. 28, 2018)
26   (Section 925 did not apply to contract entered before January 1, 2017); *ECL Grp., LLC v. Mass*,
     2018 WL 949235, at *1 (N.D. Tex. Feb. 20, 2018) ("Because the sole inquiry under Rule 12(b)(3)
27   and § 1406 is whether venue is proper under § 1391, the court need not reach Mass's argument
     that the Texas forum selection clause is invalid on the ground that it contravenes California policy
28   as expressed in Cal. Lab. Code § 925.").
     [4] Dkt. 22-5 (Offer Letter).

1   employee after February 11.  Dkt. 21-1 ¶¶ 45–70; Dkt. 40 ¶¶ 226–56.  In contrast to Royan's

2   conclusory declaration (Dkt. 44-5), McKellar specifically pleads that she performed work as an

3   employee at the direction of Kingsbury.  Dkt. 40 ¶¶ 247–56.

4         From February 11-26, 2019, McKellar worked in Mithril's San Francisco office under the

5   direction and supervision of Kingsbury, who acted as Royan's proxy.[5]  Dkt. 21-1 ¶ 61; Dkt. 40 ¶

6   247.  McKellar had multiple meetings in which McKellar walked Kingsbury through issues with

7   Mithril's investment portfolio and investors—issues that fall within Mithril's core business

8   functions.  Dkt. 21-1 ¶ 61; Dkt. 40 ¶ 247.  McKellar participated in calls and addressed issues

9   regarding Mithril's portfolio companies.  Dkt. 21-1 ¶ 61; Dkt. 40 ¶ 247.  After February 26, 2019,

10  McKellar continued to work for Mithril remotely from home and used her Mithril email address to

11  communicate with Mithril's portfolio companies and potential investments.  Dkt. 21-1 ¶ 62; Dkt.

12  40 ¶ 248.  Mithril provided McKellar with a phone and laptop and provided her with access to a

13  server to facilitate sharing Mithril documents.  Dkt. 21-1 ¶ 62; Dkt. 40 ¶ 248.

14        In written correspondence, Kingsbury instructed McKellar to continue her correspondence

15  with Mithril's investors and portfolio companies, with Kingsbury and another Mithril employee

16  copied.  Dkt. 21-1 ¶ 63; Dkt. 40 ¶ 249.  Although McKellar had become convinced of Royan's

17  fraud by March 2019, McKellar continued to perform work for Mithril while cooperating with the

18  government investigations, and Kingsbury continued to request assistance with matters that were

19  consistent with her past work as a Mithril employee before February 11.  Dkt. 21-1 ¶ 63; Dkt. 40 ¶

20  249.  McKellar provided assistance and advice to Mithril portfolio companies, just as McKellar

21  had as an employee.  Dkt. 21-1 ¶ 64; Dkt. 40 ¶ 250.  Kingsbury requested assistance with a

22  nondisclosure agreement in connection with Mithril's diligence of a prospective investment and

23  other projects.  Dkt. 21-1 ¶ 64; Dkt. 22-16; Dkt. 40 ¶ 250.  McKellar attempted to participate in

24  weekly investment team meetings, but McKellar was told by a Mithril employee that such team

25  meetings had been cancelled for everyone.  Dkt. 21-1 ¶ 64; Dkt. 22-13; Dkt. 40 ¶ 250.  McKellar

26  _____

27  [5] Mithril's near-complete reliance on recitals in the Separation and Consulting Agreements and
    various payments made under them is misplaced.  Dkt. 44 at 1-3.  Every misclassified employee is
28  treated as a contractor and paid as such.  The issue is whether the *substance* of the work makes the
    worker an employee under California law.  Here it does.

also communicated with Kingsbury regarding various deadlines associated with Mithril's investments in portfolio companies.  Dkt. 21-1 ¶ 64; Dkts. 22-11 & 22-16; Dkt. 40 ¶ 250.

Between February and July 2019, McKellar kept her title of Managing Director—the same title McKellar held as a Mithril employee before February 11.  Dkt. 21-1 ¶ 65; Dkt. 40 ¶ 251. McKellar represented herself in this manner with Mithril's and Royan's full knowledge.  Dkt. 21-1 ¶ 65; Dkt. 40 ¶ 251.  Royan specifically approved her use of this title in writing, and McKellar communicated with Kingsbury and Royan using this title in her email signature block without objection from anyone at Mithril.  Dkt. 21-1 ¶ 65; Dkt. 22-10; Dkt. 40 ¶ 251.  Never once did Kingsbury or Royan object to her use of the "Managing Director" title until the pretextual termination letter on July 17, 2019.  Dkt. 21-1 ¶ 66; Dkt. 40 ¶ 252.

In arguing that McKellar was not an employee, Mithril's opposition relies on—and then repeats—false soundbites, such as:  "To be sure, a lawyer who, following her termination, receives a courtesy title and is paid handsomely to do essentially no work at all, who performs services for others, and who refers to herself as a contractor cannot be an employee under California law." Dkt. 44 at ii; *see also id.* at 12 (same).  The truth is:  (1) McKellar did not work as a "lawyer" during that time period; she was a Managing Director who performed the same non-legal services before and after the reclassification; (2) McKellar did not receive a "courtesy title"; she kept her old title; (3) McKellar did not perform "no work at all"; she performed the work described above; and (4) McKellar referred to herself as a "contractor" in correspondence with Mithril benefits administrators at the direction of Mithril.

Other than Mithril's inaccurate characterization of the contracts, which McKellar contradicts (Dkt. 21-1 ¶¶ 54–70; Dkt. 40 at ¶¶ 241–56), Mithril's testimonial evidence that McKellar was a contractor consists of two conclusory paragraphs in Royan's declaration.  Dkt. 44 at 5 (citing Royan Decl. ¶¶ 13-14); *id.* at 11 (citing Royan Decl. ¶ 14); *id.* at 13 (citing Royan Decl. ¶ 14).  Paragraph 13 of Royan's declaration refers to what Royan "intended" or "believed" about McKellar's role.  Dkt. 44-5 ¶ 13.  He states that McKellar "did practically no work for and provided minimal advisory services to Mithril Capital after February 11, 2019" without acknowledging that Kingsbury was McKellar's supervisor (Dkt. 40 ¶¶ 246–250) and without

explaining how he had personal knowledge of what he swears to.  Dkt. 44-5 ¶ 13.  He states that McKellar was "never required to be physically present" in Mithril's offices, but McKellar testified that she worked in Mithril's San Francisco office with Kingsbury from February 11 until February 26, when the office was closed (Dkt. 21-1 ¶ 61; Dkt. 40 ¶ 247).  Dkt. 44-5 ¶ 13.  Royan falsely states that McKellar's access to "Mithril Capital's key systems and Mithril Capital's premises was duly revoked," but McKellar pleads that she continued to access Mithril's office, which was only accessible by Mithril's key system, until February 26 and then worked remotely for Mithril thereafter (Dkt. 21-1 ¶ 61–62; Dkt. 40 ¶ 247–48).  Dkt. 44-5 ¶ 10.  Royan characterizes McKellar's work as "transitional off-boarding work" that was "legal and administrative in nature" and "almost completely carryover work" from before February 11, 2019, but this is an admission that McKellar was performing the same work before and after the reclassification.  Dkt. 44-5 ¶ 14.

Mithril's argument that McKellar was not an employee boils down to its unsupported assumption that it can terminate McKellar as an employee but continue to have her do the same work for a year by labeling her a "contractor" and labeling her work "transitional."  These labels do not matter; the nature of her work after reclassification controls.  Mithril also claims that McKellar was not an employee because she announced the "**upcoming** launch" of Anathem Ventures the day before Mithril terminated her, but the formation date of her fund was October 24, 2019—months after her termination.  Dkt. 44-5 ¶ 17; Dkt. 45-13 (emphasis added); Dkt. 21-1 ¶ 41; Dkt. 40 ¶ 261.  As for McKellar's work for a core U.S. long/short hedge fund investing exclusively in U.S. public equities, this was not a competing venture fund and was specifically permitted under Consulting Agreement.  Dkt. 44-5 ¶ 16; Dkt. 44-5 ¶ 16; Dkt. 21-1 ¶ 40; Dkt. 40 ¶¶ 213, 260.  The fact that an employee might work for two employers for a period of time—on a part-time basis and with the contractual approval of one of the employers—does not transform her into contractors of both.

McKellar has pled a plausible claim of misclassification.  Dkt. 1 ¶¶ 25–28; Dkt. 21-1 ¶¶ 27, 45–70; Dkt. 40 ¶¶ 226–56.  Thus, the "burden shifts to the employer, which may prove, if it can, that the presumed employee was an independent contractor."  *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010).  Defendants have not met their burden.  The ultimate question under the

*Borello* test is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc., v. Dep't of Indus. Relations*, 48 Cal.3d 341, 350 (1989). Defendants claim that the Consulting Agreement "does not discuss the manner or means for performing work" (Dkt. 44 at 12), but this is false. *See* Dkt. 22-8 ¶ 1.1 ("Consultant [McKellar] shall report directly to Ajay Royan or his designee and shall provide her services in accordance with the instructions therefrom and with such reasonable instructions given to Consultant by any other member or officer of the company.").

Defendants fail to meaningfully address the other *Borello* factors. McKellar's pleadings, declaration, and exhibits show that her work was part of Mithril's regular business,[6] Mithril supplied the equipment and tools for her work,[7] her work was performed at Mithril's direction,[8] she was paid a salary,[9] and her work was performed over an extended period of time.[10] These factors all weigh in favor of finding McKellar was an employee as a matter of law. In response, Royan falsely claims that "Ms. McKellar did practically no work for and provided minimal advisory services to Mithril Capital after February 11, 2019." Dkt. 44-5 ¶ 13. But even if this were true (it is not), the amount of work McKellar was assigned (or not assigned) was within the control of Royan and Kingsbury. Dkt. 22-8 ¶ 1.1. Employees can be busy or not. McKellar was an employee under Section 925 before and after she executed the contracts.

### ii. The contracts were conditions of McKellar's employment.

Mithril argues that Section 925 does not apply because the Separation and Consulting Agreement were conditions of severance, and the LLC Agreement was a condition of membership. These arguments are wrong. Courts addressing Section 925 have recognized that compensation is the "most important" condition of employment. *See Friedman v. Glob. Payments*

---

[6] Dkt. 1 ¶¶ 25–28; Dkt. 40 ¶¶ 246–56; Dkt. 21-1 ¶¶ 60–70; Dkts. 22-10, 22-11 & 22-16.
[7] Royan concedes that Mithril provided "provided a new cell phone, email address, and laptop" to McKellar after February 11, 2019. Dkt. 44-5 ¶ 10; *see* Dkt. 40 ¶¶ 210, 253.
[8] The Consulting Agreement stated that McKellar would provide "advisory services in connection with management of the Company's portfolios for the term of this Agreement" and stated that her title would be "Advisory Managing Director"—similar to the "Managing Director" title McKellar held as a Mithril employee. Dkt. 22-8 ¶ 1.1. Royan confirmed in writing that McKellar could continue to use the title "Managing Director" after February 11, 2019. Dkt. 22-11.
[9] Dkt. 40 ¶¶ 245, 253.
[10] Dkt. 22-8 ¶ 2.1 (establishing a one-year term).

*Inc.*, 2019 WL 1718690, at *3 (C.D. Cal. Feb. 5, 2019).  Executing the Severance and Consulting Agreements was a condition for McKellar to receive her monthly salary and health benefits, and executing the LLC Agreement was a condition for McKellar to receive the carried interest that Mithril promised her.  Mithril cites *Down-lite Int'l, Inc. v. Altbaier*, 2019 WL 3562068, at *3 (S.D. Ohio Aug. 6, 2019) for the proposition that the LLC Agreement was not executed as a condition of employment, but the "Shareholder Agreement" at issue in *Down-Lite* was not limited to employees or used as the vehicle to pay them.

When Mithril terminated McKellar in retaliation for reporting fraud to the SEC, the July 17, 2019 termination letter stated that Mithril was "immediately terminating" McKellar's "participation in the Amended and Restated Limited Liability Company Agreement of Mithril GP Employee Feeder LLC ('Employee Feeder Agreement')."  Dkt. 22-19.  The letter was clear that McKellar's carried interest was a form of employment compensation, along with all her other benefits, and Feeder forfeited that employment compensation in connection with her termination:

> [E]ffective immediately today, July 17, 2019, we are terminating your **Employee** Feeder Agreement and Consulting Agreement, and ceasing to provide **any benefits** under your Separation Agreement.  **As a result,** you have **forfeited 100% of any carried interest points** (whether Vested Carried Interest Points or Unvested Carried Interest Points) in any funds sponsored by the Company for which you may have been eligible.  You are also no longer eligible for and have **forfeited any and all other benefits** you have received or may have been eligible to receive from the Company.  Dkt. 22-19 (emphasis added).

In *Lyon,* the defendant made a similar argument that plaintiff had not satisfied the condition of employment element, because plaintiff was terminated and it was the separation agreement, not the employment agreement, that was entered into after January 1, 2017.  2019 WL 1978802, at *7.  The *Lyon* court found that defendant's argument was without merit because the separation agreement modified the forum selection clause of the original employment agreement—the same thing the Separation and Consulting Agreements do here.  *Id.* at * 2–3, 7.

Defendants argue that the Delaware law and forum selection provisions in the LLC Agreement were a "condition of membership" in an LLC, "which is wholly separate from Ms. McKellar's relationship with Mithril Capital."  Dkt. 44 at 13.  This is inaccurate.  The name of the plaintiff is the starting point—"Mithril GP **Employee** Feeder LLC."  In his declaration, Royan

describes Feeder as "a Delaware limited liability company **through which** certain current and former **employees** of Mithril Capital Management LLC ('Mithril Capital') shared in the profits of certain investments managed by Mithril Capital."   Dkt. 22-20 ¶ 3 (emphasis added).   McKellar's June 25, 2012 offer letter specifically identified McKellar as "an employee of the Company" and granted her, among other compensation and benefits, "300 basis points of the Available Carried Interest" in Fund I.   Dkt. 21-1 ¶ 6; Dkt. 22-5 ¶ 4; Dkt. 40 ¶ 298.   McKellar's 2014 Admission Letter to the LLC Agreement identified her "Employment Date" as June 14, 2012 and established the vesting schedule for her carried interest based on anniversaries of that date.   Dkt. 22-6.   The 2019 Admission Letter modified McKellar's carried interest in the LLC Agreement.   Dkt. 22-4. Notably, the 2019 Admission Letter was attached as Exhibit A to the Separation Agreement (Dkt. 22-7 at 1), and the choice of law and forum selection clauses in the Separation Agreement modified McKellar's original employment agreement, bringing it under Section 925.   Because Feeder was simply a vehicle for Mithril to pay its employees carried interest, the terms with the LLC Agreement are conditions to employment.

### iii.   McKellar was not in fact individually represented by counsel in negotiating the terms of the contracts.

Section 925(e) states that "[t]his section shall not apply to a contract with an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement to designate either the venue or forum in which a controversy arising from the employment contract may be adjudicated or the choice of law to be applied."   Cal. Lab. Code 925(e).   Section 925's specific use of the *different* terms "employee" and "legal counsel" reflects that they must be *different* people, where the "employee" is "in fact represented by legal counsel in negotiating the terms of an agreement."   *See id.*

The fact that McKellar is an attorney (without any California employment law experience) is irrelevant.   If the California legislature wanted to exempt all attorneys from the protection of Section 925, it could have said so.   Instead, the California legislature contemplated that the employee would be actually represented by a third-party attorney who would negotiate the terms of the contract on behalf of the employee.   This black letter interpretation of the statute is

-13-

1   reinforced by Section 925's legislative history.[11]

2   Defendants attempt to argue that McKellar was represented by counsel due to a recitation

3   in the Consulting Agreement—which Mithril drafted—stating: "The parties have been provided

4   the opportunity to be and have been represented by their own respective counsel in connection

5   with the negotiation of this Agreement."  Dkt. 22-8 ¶ 16.  Defendants then argue that McKellar is

6   estopped from asserting she was not in fact represented by counsel under California Evidence

7   Code § 622.  Dkt. 44 at 14.  Defendants' reliance on this statute is misplaced, as several California

8   courts have concluded that Section 622 is inapplicable to adhesion contracts offered on a take-it-

9   or-leave-it basis, which is consistent with the policy of Section 925.[12]

10   Mithril drafted the contracts and Royan presented them to McKellar on a take-it-or-leave-it

11   basis to be accepted by the end of the day, February 11.  Dkt. 21-1 ¶ 49; Dkt. 40 ¶ 235.  Royan

12   attempts to mitigate the oppressive circumstances surrounding the contracts negotiation (or lack

13   thereof) and execution by stating in his declaration: "When Ms. McKellar signed the Separation

14   and Consulting Agreement made no difference to me or Mithril Capital" and "I made a joke about

15   'Hawaii time' being the only time that matters…"  Dkt. 44-5 ¶¶ 7, 9.  Royan's representations are

16   unconvincing because Kingsbury *physically monitored* McKellar's execution of the documents at

17   *1:14 am* on February 12 in Mithril's San Francisco office.  Dkt. 1 ¶¶ 140–44; Dkt. 21-1 ¶ 51; Dkt.

18   40 ¶ 237.  These employment agreements were contracts of adhesion.  Mithril somehow obtained

19   McKellar's personal text messages showing she did **not** "have an employment lawyer look at it."

20   Dkt. 45-14.  McKellar herself did not negotiate contract terms during her 16 minutes with all the

21   documents.  Dkt. 40 ¶¶ 145, 234–235.

22

---

23   [11]  Shelton Reply Decl. Ex. 2 ("*This bill does not apply to employees who are represented by counsel who have negotiated employment terms.*  Since this bill is aimed at protecting employees

24   who may not have sufficient bargaining power throughout the employment relationship, this bill exempts employment contracts where an employee is individually represented by legal counsel in

25   negotiating terms of an agreement that designate venue or the choice of law.") (Assembly Floor Analysis, Senate Third Reading, SB 1241 (as amended Aug. 29, 2016) at p.3)

26   [12]  *See Perez v. Performance Food Group, Inc.*, 2017 WL 6940526, at *8 n.4 (C.D. Cal. Dec. 15, 2017); *see also City of Santa Cruz v. Pac. Gas & Elec. Co.*, 82 Cal. App. 4th 1167, 1176 (2000)

27   (Section 622 does not apply to contract offered on "take-it-or-leave-it-basis" that was not the product of "arm's length negotiations marked by the opportunity of both sides 'to accept, reject, or

28   modify the terms of the agreement'"); *Citizens Bus. Bank v. Gevorgian*, 218 Cal. App. 4th 602, 625 (2013) (Section 622 does not apply to "recitals in an adhesion contract").

**2.  McKellar has demonstrated a likelihood of irreparable harm.**

Defendants claim that litigation expenses do not constitute irreparable injury, citing *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 735 n. 20 (9th Cir. 2017).  But that case did not involve a California employee invoking the protections under Section 925.  *Compare Lyon*, 2019 WL 1978802 (finding irreparable harm because employee's "rights under California law—he has invoked them in full—would be frustrated under 925 at least").  Defendants also fail to address that this three-front litigation will detract from McKellar's new business, which is at a critical stage of development.  *Lyon*, 2019 WL 1978802, at *8; Dkt. 21-1 ¶ 97; Dkt. 40 ¶ 291.

**3.  The balance of equities and public interest factors support an injunction.**

Defendants ignore California's "strong public interest to protect employees from litigating labor disputes outside of their home state" under Section 925 in arguing that the balance of equities tilt in their favor.  *Lyon*, 2019 WL 1978802, at *9.  Particularly given McKellar's showing of Dodd-Frank retaliation, the equities overwhelmingly favor issuance of the injunction.

**D.  A bond is not appropriate.**

Defendants ask the Court to impose an arbitrary bond in the amount of $100,000.  Dkt. 44 at 15.  This request is punitive and untethered to any showing of actual damages that Mithril would suffer if forced to adjudicate its claims in California where the conduct at issue occurred.  The *Lyon* court refused to require a bond, and this Court should as well.  2019 WL 1978802, at *9.

# III.  CONCLUSION

McKellar requests that the Court grant the motion, enter the injunction in the form set forth in McKellar's proposed order (Dkt. 21-26), and award reasonable attorney fees in an amount to be set by subsequent briefing.[13]

---

[13]  McKellar filed her Verified First Amended Complaint on January 30, 2020.  Dkt. 40.  McKellar was entitled to file an amended pleading as of right and without leave of Court pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  McKellar filed her amended pleading well in advance of the February 7 deadline under Rule 15 and before Mithril's opposition to the present motion was due.  When Mithril requested a one-week extension of time to file its opposition, McKellar agreed so long as the extension applied equally to McKellar's motion for preliminary injunction and Mithril's motion to compel arbitration.  Both motions were filed on January 17, both are set for hearing on February 28, and both raise Section 925.  Mithril rejected the extension it requested because McKellar would not agree to have Mithril's motion to compel arbitration heard before the present motion.  Dkt. 44 at 10 n.10; Dkt. 44-4.

DATED:      February 7, 2020            EVERSHEDS SUTHERLAND (US) LLP


                                        By:   _/s/ Ian S. Shelton_____
                                              Ian S. Shelton

                                              Attorney for Plaintiff Crystal McKellar

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION