IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL SCRIPPS MCKELLAR,<br><br>   Plaintiff,<br><br>  v.<br><br>MITHRIL CAPITAL MANAGEMENT LLC, et al.,<br><br>   Defendants. | Case No. 19-cv-07314-CRB<br><br>**ORDER COMPELLING ARBITRATION, DISMISSING CLAIMS, AND DENYING PRELIMINARY INJUNCTION** |

  Crystal Scripps McKellar once served as a Managing Director and General Counsel of Mithril Capital Management LLC. Now, she is embroiled in no fewer than three lawsuits in three separate states with Mithril Capital, its owner and Managing General Partner Ajay Royan, and a related entity, Mithril GP Employee Feeder LLC (collectively, "Mithril"). McKellar brought the instant action in an effort to enjoin Mithril from prosecuting the other two. Mithril has moved to compel certain of her claims to arbitration, and to stay or dismiss the rest of her case under the "first-to-file" rule. The Court agrees that it lacks jurisdiction over McKellar's claims. Mithril's motion is therefore granted, and McKellar's motion is denied. Because no hearing is necessary to reach this conclusion, the motion hearing set for Friday, March 20, 2020, is vacated.

**I. BACKGROUND**

  Mithril Capital is a venture capital firm that manages two venture capital funds. FAC (dkt. 40) ¶ 20.[1] Royan is Mithril Capital's owner and Managing General Partner. Id. ¶¶ 16, 20.

---

[1] Mithril objects to McKellar's reliance on her First Amended Complaint as evidence for her motion for a preliminary injunction. See Objection to Reply Evidence (dkt. 53). Because the motion for a preliminary injunction is being denied, this objection is moot. To the extent Mithril also objects to consideration of the FAC in connection with this motion, the Court will grant its

Mithril Feeder exists to distribute to certain employees of Mithril Capital carried interest generated by Mithril's venture capital funds. Id. ¶ 31. Mithril Feeder is a Delaware limited liability company. Id. ¶ 16.

In happier times, McKellar was General Counsel and a Managing Director of Mithril Capital, a member of Mithril Feeder entitled to awards of carried interest, and long-time friend of Royan's. Id. ¶¶ 21, 23, 31. She was well-qualified for these roles. McKellar is a Harvard Law School graduate, member of the California Bar, and has worked for Judge Marilyn L. Huff, Davis Polk & Wardwell LLP, and Morrison & Foerster LLP. Shipley Decl. Ex. A (dkt. 23-2) & Ex. B (dkt. 23-3).

As a member of Mithril Feeder, McKellar agreed to comply with Mithril Feeder's LLC Agreement. FAC ¶¶ 31–32. The LLC Agreement provided that "in the event of any dispute arising out of or relating to this Agreement, or the negotiation, execution or performance of this Agreement . . . the parties hereto consent and submit to the exclusive jurisdiction of the Federal and state courts of the State of Delaware and the Federal and state courts of the State of California." Royan Decl. Ex. 1 (dkt. 23-5) ¶ 15.07.

In the early morning hours of February 12, 2019, McKellar signed the Separation and Consulting Agreements (collectively, "the Agreements), which purported to set forth the terms of her departure from Mithril. FAC ¶¶ 233, 237. McKellar claims that she had no meaningful opportunity to review or negotiate the Agreements' terms. Id. ¶¶ 235–37. According to her, she was presented with the Agreements on a take-it-or-leave-it basis, signed them just sixteen minutes after having received the final version of the Consulting Agreement, and was not represented by counsel during negotiations. Id. at 234–38.

The Separation Agreement provided for a $225,000 severance payment and carried interest points per the LLC Agreement. Royan Decl. Ex. 2 (dkt. 23-6) at 1. The Consulting Agreement provided for an additional $225,000 in payment for McKellar's work as an independent

---

alternative request to submit the Kingsbury Declaration as rebuttal evidence. Id. at 3. McKellar has lodged her own objection to Mithril's reply evidence. See Objection to Reply Evidence (dkt. 65). Because the evidence McKellar objects to is not necessary to this Order or relevant to the Court's analysis, that objection is denied as moot.

contractor. Royan Decl. Ex. 3 (dkt. 23-7) ¶¶ 1.1, 3. McKellar was to "undertake advisory services in connection with management of the Company's portfolios," "as an independent contractor with the title 'Advisory Managing Director.'" Id. ¶ 1.1. She was to "report directly to Ajay Royan or his designee and . . . provide her services in accordance with the instructions therefrom and with such reasonable instructions given . . . by any other member or officer of the Company." Id.

Both agreements contained broad arbitration provisions. The Consulting Agreement stated that "[t]o the fullest extent allowed by law, any controversy, claim or dispute between Consultant and the Company (and/or any of its owners, directors, officers, employees, or agents) relating to or arising out of Consultant's relationship or the cessation of that relationship will be submitted to final and binding arbitration before a panel of arbitrators in . . . Travis County, Texas for determination in accordance with the American Arbitration Association's ('AAA') National Rules for the Resolution of Employment Disputes." Id. ¶ 13. The Separation Agreement included a similar provision. Royan Decl. Ex. 2 at 5.

Both agreements contain Texas choice-of-law provisions. Id. at 6; Royan Decl. Ex. 3 ¶¶ 12. The Consulting Agreement states that "each of the parties hereby consents to personal jurisdiction in Texas." Royan Decl. Ex. 3 ¶ 12.

The parties offer starkly different accounts of the period that followed the execution of the Agreements. Mithril insists that "Ms. McKellar did practically no work for and provided minimal advisory services to Mithril Capital after February 11, 2019." Mot. (dkt. 23) at 4. McKellar alleges that although she ceased to serve as Mithril's General Counsel, she otherwise "continued to perform many of the same non-legal job functions that she performed at Mithril prior to February 11." FAC ¶ 246. She claims that she continued to work out of Mithril's San Francisco office and with a phone and laptop provided by Mithril. Id. ¶¶ 247–48. And, she says, her work was conducted "under the direction and supervision of [Mithril Chief of Staff John] Kingsbury, who acted as Royan's proxy." Id. ¶ 247.

Whatever McKellar did between this period of relatively friendly relations between her and Mithril, the peace was not to last. "On July 17, 2019, McKellar received a letter from Mithril, signed by Kingsbury, claiming that she was in violation of her Separation and Consulting

3

Agreements and that Mithril was terminating those agreements and forfeiting McKellar's employment compensation, including her entire carried interest in" Mithril's venture capital funds. Id. ¶ 196. McKellar's position is that this constituted unlawful retaliation for her cooperation with the government's investigation of Mithril. Id. ¶ 197.

Mithril Capital proceeded to sue McKellar in Texas state court (the "Texas Action"), alleging that she had violated various provisions of the Separation and Consulting Agreements. Id. ¶¶ 202–03. Next, Mithril Feeder sued McKellar in Delaware state court (the "Delaware Action"), seeking a declaration that it was appropriate to strip her of her carried interest. Id. ¶ 208. McKellar subsequently removed both actions to federal court. Royan Decl. Ex. 6 (dkt. 23-10); Ex. 8 (dkt. 23-12). A motion to remand is pending in the Delaware Action. Royan Decl. Ex. 9 (dkt. 23-13). No discovery has been taken in either case, and Mithril has done nothing in the Texas Action besides file its complaint. Mot. at 5 & n.3.

McKellar responded by filing the instant action. She seeks a preliminary injunction barring Mithril from prosecuting the Texas and Delaware Actions under California Labor Code § 925. See Mot. for PI (dkt. 21) at i. Mithril has moved to compel arbitration of McKellar's claims against Mithril Capital and Royan, and to stay or dismiss her claims against Mithril Feeder. See generally Mot.

## II. LEGAL STANDARD

The Federal Arbitration Act provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[P]rivate agreements to arbitrate are enforced according to their terms." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989). A party may therefore petition a United States district court "for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).

However, courts have interpreted the FAA as "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). This presumption of arbitrability dictates that courts should not deny a motion to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., 475 U.S. at 650. Under the FAA, a district court's role is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Id. The Supreme Court, however, has recognized that "parties can agree to arbitrate [the] 'gateway' question[ ] of 'arbitrability,'" thereby delegating that antecedent decision to an arbitrator. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68–69 (2010).

### III. DISCUSSION

This Order proceeds as follows. First, it explains why it is compelling McKellar's claims against Mithril Capital and Royan to arbitration. Next, it determines whether arbitration should proceed in Texas or California. Finally, it explains why the Court will decline jurisdiction over McKellar's claims against Mithril Feeder.

#### A. Arbitration

Mithril's motion to compel arbitration is granted for two reasons. First, because questions of arbitrability were themselves delegated to the arbitrator. The Court therefore has no jurisdiction to consider many of McKellar's arguments against enforcement of the arbitration provisions. Second, because Mithril has not waived its right to compel arbitration.

##### 1. Whether Questions of Arbitrability Were Delegated to the Arbitrator

The "gateway" question of arbitrability asks "whether the parties have submitted a particular dispute to arbitration." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). The parties can agree that this question, like any other, will be decided by an arbitrator. Rent-A-Ctr., 561 U.S. at 68–89. However, "the federal policy in favor of arbitration does not extend to

deciding questions of arbitrability." Oracle Am., Inc., v. Myriad Grp. A.G., 724 F.3d 1069, 1072 (9th Cir. 2013). Courts should presume that they determine arbitrability "unless the parties clearly and unmistakably provide otherwise." Howsam, 537 U.S. at 83 (internal alterations and quotation marks omitted). Clear and unmistakable evidence can include "a course of conduct demonstrating assent . . . or . . . an express agreement." Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011) (omissions in text). Courts should not necessarily resolve ambiguities regarding the delegation of arbitrability in favor of arbitration, see First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944–45 (1995), nor should they apply "ordinary state-law principles that govern the formation of contracts" as they normally would, Momot, 652 F.3d at 987–88.

Both the Separation and the Consulting Agreement state that arbitration is to be conducted pursuant to the "American Arbitration Association's ('AAA') National Rules for the Resolution of Employment Disputes." Royan Decl. Ex. 2 (dkt. 23-6) at 5; Royan Decl. Ex. 3 (dkt. 23-7) ¶ 13. The currently operative version of those rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Mot. at 11 (citing AAA Employment Arbitration Rules and Mediation Procedures, Rule 6(a)). The Ninth Circuit has held "that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015). This holding was limited to contracts between sophisticated parties. Id. at 1130–31. This Court has treated parties comparable to McKellar as sophisticated for purposes of applying the rule from Brennan. See Khraibut v. Chahal, No. C15-04463 CRB, 2016 WL 1070662, at *6 (N.D. Cal. March 18, 2016) (finding that a "savvy entrepreneur in his own right" with "other dealings in the business world" "was at least minimally sophisticated," such that Brennan applied).

McKellar does not contest her sophistication but argues that no delegation provision was incorporated by reference because the agreements refer to the AAA's National Rules, and the delegation provision cited by Mithril is contained in the AAA's Employment Arbitration Rules and Mediation Procedures. Opp'n (dkt. 43) at 9–10. The National Rules do not contain such a provision. Id. at 10.

6

This argument fails, because the National Rules specifically provided that "[t]hese rules, and any amendment of them, shall apply in the form obtaining at the time the demand for arbitration or submission is received by the AAA." Shelton Decl. Ex. A (dkt. 43-2) at Rule 1. The AAA's Employment Arbitration Rules and Mediation Procedures—with a delegation provision—are the "amendment" of the National Rules which currently obtain. See Shelton Decl. Ex. B at 10 ("The National Rules for the Resolution of Employment Disputes have been re-named the Employment Arbitration Rules and Mediation Procedures. Any arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration Rules and Mediation Procedures."). Other courts considering this question have concluded that when an agreement incorporates AAA rules which provide for application of the most up-to-date version of the rules, that agreement incorporates the current version of the rules. Marriott Ownership Resorts, Inc. v. Flynn, No. 14-00372 JMS-RLP, 2014 WL 7076827, at *14 (D. Haw. Dec. 11, 2014) (collecting cases).

In the alternative, McKellar argues that the delegation provision was unconscionable. Opp'n at 11. She alleges she had less than an hour to review the agreements, near midnight and in the early hours of February 12, 2019, without legal representation. FAC ¶¶ 237–38. She contends that under these circumstances, she could not have been expected to read the National Rules, and then find the delegation provision in the most up-to-date amended version of those rules. Opp'n at 11.

Under California law, a contract provision must be both procedurally and substantively unconscionable for a court to refuse to enforce it under the doctrine of unconscionability.[2] Armendariz v. Foundation Health Psychare Servs., Inc., 6 P.3d 669, 690 (Cal. 2000), abrogated on other grounds by, abrogated on other grounds by, abrogated on other grounds by, AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011). The former requirement looks to "'oppression' or

---

[2] Arguably Texas law should apply. See Reply (dkt. 47) at 6 n.7. But Mithril has agreed to argue other unconscionability issues under California law, id., and in any event it appears that Texas contract law would yield the same result as California's, see In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002) (Texas law requires both procedural and substantive unconscionability); Saravia v. Dynamex, Inc., 310 F.R.D. 412, 419 (N.D. Cal. 2015) (recognizing situations where substantive unconscionability is more difficult to establish under California as opposed to Texas law).

'surprise' due to unequal bargaining power, the latter [to] 'overly harsh' or 'one-sided' results." Id. A mere bad bargain does not suffice to establish substantive unconscionability. The provision must be "so one-sided" that it "shock[s] the conscience." Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting Baltazar v. Forever 21, Inc., 367 P.3d 6, 12 (Cal. 2016)). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz, 6 P.3d at 690.

Even if McKellar's allegations are accepted as true, she has established at most a minor degree of procedural unconscionability. Her allegations concerning the circumstances under which she signed the agreements suggest that she did not have the time or representation necessary to meaningfully negotiate the terms of the bargain. Considering the analogous problem of contracts of adhesion, the Ninth Circuit has concluded that "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1261–62 (9th Cir. 2017). To determine whether a contract of adhesion is in fact procedurally unconscionable, California courts consider various factors, including "relative bargaining power and sophistication of the parties," the availability of "market alternatives," whether the relevant provision "is buried in a lengthy agreement," and whether the agreement arose in "a situation where adhesion contracts are oppressive . . . such as . . . when an employee is presented with an employment contract." Shierkatz Rllp v. Square, Inc., No. 15-cv-02202-JST, 2015 WL 9258082, at *9 (N.D. Cal. Dec. 17, 2015) (internal quotation marks, citations, and alterations omitted). The delegation provision was found in a document two degrees of incorporation by reference away from the actual Agreements, which surely weighs in favor of finding procedural unconscionability. See id. ("The fact that the Delegation Provision did not explicitly state that the arbitrator shall decide arbitrability, but instead did so by incorporating the AAA and JAMS rules, also supports a finding of procedural unconscionability."). On the other hand, an experienced lawyer with an impressive resume is a highly sophisticated party in a better bargaining position than most employees. And the circumstances under which the agreements were signed were, even according to McKellar's account, less oppressive than the typical

employment arrangement. McKellar was arranging relatively favorable terms for her departure from Mithril. Surely she was under less pressure to accept than someone starting a job.

But even assuming McKellar has established some degree of procedural unconscionability, her failure to make any argument as to substantive unconscionability is fatal. See Opp'n at 11. Her arguments that the arbitration provisions generally were unconscionable may not be considered when assessing the enforceability of the delegation provisions specifically. Mohamed, 848 F.3d at 1210. McKellar makes no arguments that delegating questions of arbitrability to the arbitrator is so unfair to her that it "shocks the conscience." See Opp'n at 11. Having established at best a moderate degree of procedural unconscionability, McKellar's failure to demonstrate any substantive unconscionability is fatal. See Gutierrez v. FriendFinder Networks Inc., No. 18-cv-05918-BLF, 2019 WL 1974900, at *11 (N.D. Cal. May 3, 2019).

Because the agreements delegated gateway issues of arbitrability to the arbitrator, the Court does not consider McKellar's arguments that the Agreements' arbitration provisions are unconscionable. See Brennan, 796 F.3d at 1132.

### 2. Waiver

As an initial matter, it appears that whether or not Mithril has waived its right to arbitrate has, like other gateway questions of arbitrability, been delegated to the arbitrator. True, "courts generally decide whether a party has waived his right to arbitration by litigation conduct." Martin v. Yasuda, 829 F.3d 1118, 1124 (9th Cir. 2016). But that is because waiver is a "question of arbitrability" which is presumptively for a court to determine, "unless the parties clearly and unmistakably provide otherwise." Id. at 1123 (citing Howsam, 537 U.S. at 83). As discussed above, incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate this category of questions to the arbitrator, see Brennan, 796 F.3d at 1130, so it would appear that that the waiver question, like other questions of arbitrability, is on for the arbitrator. However, Mithril does not make that argument, so the Court will analyze whether it has waived its right to arbitration. See Reply at 2–5.

Like any other contractual right, the right to arbitration can be waived. Martin, 829 F.3d at 1124. "[T]he strong federal policy favoring enforcement of arbitration agreements," means that

9

"waiver of the right to arbitration is disfavored" and "any party arguing waiver of arbitration bears a heavy burden of proof." Id. (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)). To prove waiver of the right to arbitrate, a party "must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Id. (quoting Fisher, 791 F.2d at 694). Because the Court concludes that the second requirement is not met here, it is not necessary to consider whether Mithril knew of its right to arbitrate or if McKellar has suffered prejudice.

McKellar relies on Mithril's filing the Texas Action in state court to show acts inconsistent with the right to arbitrate.[3] Opp'n at 5–6. A survey of caselaw on waiver shows that most courts to consider the issue have concluded that the mere filing of a lawsuit is insufficient, on its own, to demonstrate waiver. See, e.g. ConWest Res., Inc. v. Playtime Novelties, Inc., No. C 06-5304 SBA, 2007 WL 1288349, at *4 (N.D. Cal. May 1, 2007) ("While filing a complaint itself does not waive the right to pursue arbitration, intentionally electing a judicial forum rather than an arbitral forum is a factor that may be weighed."); but see Steiner v. Horizon Moving Sys., Inc., No. EDCV 08-682-VAP (CTx), 2008 WL 4822774, at *3 (C.D. Cal. Oct. 30, 2008) ("The second requirement for waiver exists here, as Plaintiff has acted inconsistently with the existing right by filing a lawsuit in lieu of seeking arbitration of her claims."). The Court finds this approach consistent with the well-established presumption favoring enforcement of arbitration agreements and follows it here. If anything, the mere filing of a complaint is an even less persuasive argument for waiver in this case, because McKellar is relying on related but distinct litigation. In other cases, the parties who ostensibly waived the right to arbitration had themselves initiated the litigation sought to be arbitrated. Cf. Steiner, 2008 WL 4822774, at *1.

The additional factors that courts have found to constitute inconsistent conduct when combined with filing a lawsuit are not present here. Courts have found that requesting a jury trial,

---

[3] McKellar does not appear to rely on the Delaware Action to show waiver. Opp'n at 5–6. If she did, that argument would fail, because the parties agree that Mithril's claims in the Delaware Action are not arbitrable. See Conover v. Dean Witter Reynolds, Inc., 837 F.2d 867, 868 (9th Cir. 1988).

10

see United Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756, 765 (9th Cir. 2002), or refusing requests for arbitration, see ConWest Res., 2007 WL 1288349, at *4, combined with initiating litigation in court, is inconsistent with the right to arbitrate. In contrast, the Texas Action has hardly been litigated. After filing its complaint, Mithril did nothing besides request (and receive) a continuance pending this Court's resolution of the pending motion. See Shipley Decl. Ex. A (dkt. 47-2) & Ex. B (dkt. 47-3). Mithril has not acted inconsistently with its right to arbitrate, and therefore has not waived that right.

### B. California Labor Code § 925

Although the Court agrees McKellar's claims against Royan and Mithril Capital must be compelled to arbitration, the question remains where that arbitration should proceed. California Labor Code § 925 renders voidable any contractual provision that requires "an employee who primarily resides and works in California, as a condition of employment, to agree to . . . adjudicate outside of California a claim arising in California" or which would "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." If the employee requests that such a provision be voided, "the matter shall be adjudicated in California and California law shall govern the dispute." Cal. Labor Code § 925(b).

The parties agree that section 925 is relevant to the instant motion because if the Court compels arbitration it must decide to do so either in California, per the statute, or in Texas, per the Agreements. See Mot. at 9 n.7; Opp'n at 14. Mithril maintains section 925 is inapplicable either because McKellar was not an employee once she signed the Agreements or because she was represented by counsel when the Agreements were negotiated.

#### 1. Whether McKellar Was an Employee

Section 925 applies only to employees. Karl v. Zimmer Biomet Holdings, Inc., No. C 18-04176 WHA, 2018 WL 5809428, at *2 (N.D. Cal. Nov. 6, 2018). Courts in this district considering motions to transfer venue have held that "whether § 925 applies . . . 'depends on a careful consideration of whether the complaint sets out facts and circumstances (taken as true) from which one could conclude that plaintiff has made a substantial showing that he or she is an

employee under California law." Yeomans v. World Fin. Grp. Ins. Agency, Inc., No. 19-cv-00792-EMC, 2019 WL 5789273, at *3 (N.D. Cal. Nov. 6, 2019) (quoting Karl, 2018 WL 5809428, at *3). Judge Chen has reasoned that "[t]hat approach recognizes the presumption of an employment relationship under California law, the strong policy underlying § 925, as well as the defendant's interest in not having its right to the venue contemplated in its contract undermined by a frivolous or conclusory assertion by Plaintiffs." Id. Although the instant motion is not one to transfer venue, deciding where to compel an action to arbitration implicates the same concerns identified in Yeomans. This Order therefore applies the plausibility standard from Karl and Yeomans to decide whether section 925 applies to McKellar.

The parties dispute which of California's two tests for determining employee status should be employed. Under California Labor Code § 2750.3 "a person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity" can show that "(A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the and in fact," "(B) The person performs work that is outside the usual course of the hiring entity's business," and "(C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed." But this test does not apply to "[a]n individual who holds an active license from the State of California and is practicing one of the following recognized professions," including lawyers. Cal. Labor Code § 2750.3(b)(3). In that case, "the determination of employee or independent contractor status . . . shall instead be governed by the California Supreme Court's decision in S.G. Borello & Sons, Inc. v. Department of Industrial Relations (1989) 48 Cal. 3d 341 (Borello)." Cal. Labor Code § 2750.3(a)(3). Borello announced a multi-factored test, whose ultimate aim is to determine "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." 769 P.2d 399, 404 (Cal. 1989).

Mithril thinks that Borello controls, because McKellar is a licensed and practicing attorney. Mot. at 8. But McKellar claims she did no legal work after her change of role at Mithril. FAC ¶ 246. It is unnecessary to decide who has the better of this argument, because McKellar has

12

adequately alleged her status as an employee under either test.

Under both tests, a finding that the hiring entity controls the "manner and means" of the individual's work is dispositive. The Consulting Agreement provided that McKellar would "report directly to Ajay Royan or his designee and shall provide her services in accordance with the instructions therefrom and with such reasonable instructions given to Consultant by any other member or officer of the company." Royan Decl. Ex. 3 ¶ 1.1. And McKellar alleges that she "worked under the direction of Kingsbury, who was acting as Royan's proxy." FAC ¶ 151. These allegations illustrate that both under the terms of the Consulting Agreement and in fact, McKellar was working under the direction of the hiring entity and was therefore an employee under either test.

This conclusion is supported by various other factors from Borello which are satisfied by McKellar's allegations. She alleges that she continued to work in Mithril's office space and using tools provided by Mithril, id. ¶¶ 150 & 210, was paid a salary, id. ¶ 245, and that her work was part of Mithril's regular business of investing, id. ¶¶ 246–56; compare Borello, 769 P.2d at 404 (listing factors relevant to determining employee status).

Mithril's contrary factual claims do not undermine this conclusion. It argues that "[a] lawyer who, following her termination, is provided a courtesy title and paid handsomely to do essentially no work at all, and is anticipated to 'perform services for others,' cannot be an 'employee' under any applicable test." Mot. at 9. To the contrary, the amount of work McKellar did, the handsomeness of her compensation, and whether she did work for others are all irrelevant to the key question under either applicable test—Mithril's control over the work she did do, however minimal. The fact that the Consulting Agreement referred to McKellar as a consultant "is not dispositive." Borello, 769 P.2d at 403. The other evidence Mithril points to, such as the fact that McKellar submitted invoices for consulting work and was responsible for taxes and withholdings, see Opp'n to PI (dkt. 44) at 13, is suggestive but insufficient to overcome the central question of control.

Because McKellar was an employee even after she signed the Agreements, it is unnecessary to address her alternative argument that the Court should only consider her

employment status prior to signing the Agreements. Opp'n to Notice of Renewal (dkt. 59) at 5–6.

### 2. Whether McKellar Was Represented by Counsel

Even if McKellar was an employee, Mithril contends section 925 is inapplicable because it contains an exception for "an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement." Cal. Labor Code § 925(e). Mithril does not claim McKellar was actually represented by a lawyer. See Mot. at 9–10. Indeed, McKellar's allegations and Mithril's own exhibits demonstrate she was not. See FAC ¶ 238; see also Royan Decl. Ex. 12 (dkt. 44-17). Instead, Mithril argues that because the Consulting Agreement stated that McKellar was represented by a lawyer, California Evidence Code § 622 prevents her from claiming otherwise. Mot. at 9–10. Under section 622 "[t]he facts recited in a written instrument are conclusively presumed to be true as between the parties thereto." Cal. Evid. Code § 622.

Other courts have held this rule inapplicable in cases where the contract is alleged to be unconscionable. Perez v. Performance Food Grp., Inc., No. LA CV17-00357 JAK (SKx), 2017 WL 6940526, at *8 n.4 (C.D. Cal. Dec. 15, 2017) (collecting cases). The Court agrees with this logic and follows it here. If a contract is otherwise unenforceable, it would be unjust to bind the parties to its factual representations. A contrary rule would create a preserve incentive to preserve otherwise unenforceable contracts by slipping in false factual representations. Because McKellar argues the negotiation of the Agreements gave rise to procedural unconscionability, and that the arbitration provision was substantively unconscionable, Opp'n at 11–14, section 622 does not apply. Absent the evidentiary presumption, there is no evidence McKellar was represented, so section 925(e) is equally inapplicable.

Because the Court concludes section 925 is satisfied, it compels McKellar's claims to arbitration in California.

### C. "First to File" Rule

District courts have discretion "to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94–95 (9th Cir. 1982). Three factors dictate whether the first

14

to file rule applies: the chronology of the actions, the similarity of the parties, and the similarity of the issues. Wallerstein v. Dole Fresh Vegetables, Inc., 967 F. Supp. 2d 1289, 1293 (N.D. Cal. 2013). "Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit." Pacesetter, 678 F.2d at 95. But, the "'first to file' rule is not a rigid or inflexible rule to be mechanically applied," and so "[c]ircumstances and modern judicial reality" may require "a different approach from time to time." Id. (internal citations omitted).

Mithril urges the Court to decline jurisdiction over McKellar's claims against Mithril Feeder because the earlier-filed Delaware Action involves "the same parties and issues."[4] Mot. at 14–15. There is no doubt that the Delaware Action was first filed and involves identical parties. It also involves similar issues. The "first to file" rule does not require identity of claims, only substantial similarity. Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc., 544 F. Supp. 2d 949, 959–60 (N.D. Cal. 2008). That standard is met here. Mithril's complaint in the Delaware Action seeks declaratory relief that McKellar breached her agreement with Mithril Feeder, Royan Decl. Ex. 7 (dkt. 23-11) ¶¶ 64–74, and damages for the breach, id. ¶¶ 75–83. McKellar's claims against Mithril Feeder are all based on her theory that she was wrongly denied the carried interest she was owed under her agreement with that entity. FAC ¶¶ 292–313, 346–62. Similarly, she seeks a declaration that she did not breach her agreement with Mithril Feeder. Id. ¶ 360. These claims implicate overlapping issues. Indeed, a finding for Mithril would foreclose McKellar's claims, and (to at least some extent) vice versa. Maintaining jurisdiction over McKellar's claims against Mithril Feeder in the face of the earlier-filed Delaware Action would therefore risk duplicative work and conflicting judgments. The core purposes of the first to file rule are implicated here. Pacesetter, 678 F.2d at 96.

---

[4] The parties agree most of McKellar's claims against Mithril Feeder are not subject to arbitration. Mot. at 14–15. The exception is McKellar's new Dodd-Frank Act retaliation claim, which Mithril argues "arises" from her work for the other Mithril defendants and is therefore subject to arbitration. Reply at 14–15. Because, as explained below, the Dodd-Frank Act claim is "substantially similar" to those in the Delaware Action, it is unnecessary to reach the issue. This Court declines jurisdiction over this claim pursuant to the "first to file" rule. The court presiding over the Delaware Action may determine whether it should be compelled to arbitration.

McKellar does not really contest this conclusion. Instead, she argues that the Court should exercise its discretion to not apply the first to file rule, because she lives in San Francisco, the events at issue all occurred in California, and "Feeder's Delaware Action evidences bad faith, an anticipatory suit, and forum shopping." Opp'n at 15. To the contrary, there is no reason to think that a Delaware entity filing in Delaware an action involving Delaware law evinces bad faith, anticipation, or forum shopping. And although the convenience of parties and witnesses is relevant, it is not dispositive. See Pacesetter, 678 F.2d at 96–97. In this case, it is overcome by the other considerations that support declining jurisdiction.

The Court therefore declines jurisdiction over claims against Mithril Feeder.[5] Those claims are dismissed.

## IV. CONCLUSION

For the foregoing reasons, McKellar's claims against Royan and Mithril Capital are compelled to arbitration in California. McKellar's claims against Mithril Feeder are dismissed.[6]

**IT IS SO ORDERED.**

Dated: March 13, 2020

CHARLES R. BREYER
United States District Judge

---

[5] Because it does not appear that the Delaware Action has been remanded, there is no need to determine whether Colorado River abstention applies.

[6] Both parties have filed various motions to file exhibits under seal. See Mot. to File under Seal (dkt. 48); Mot. to File under Seal (dkt. 45); Mot. to File under Seal (dkt. 24); Mot. to File under Seal (dkt. 22). Those motions are denied insofar as they seek to file under seal material referenced in this order. As to that material, the Court concludes that neither "compelling reasons" nor "good cause" exist to overcome the "public interest in understanding the judicial process." See Kamakana v. City and Cty. of Honolulu, 447 F.3d 1172, 1178–81 (9th Cir. 2006). The motions to file under seal are otherwise granted.